'JUDGE HARDIN
delivered the opinion op the court:
A check drawn by Clark, Bigelow & Co. on the First National Bank of Memphis, Tennessee, payable to J. T. *336 Petitt & Co., for two thousand nine hundred and twenty-nine dollars and seventy-six cents, dated the 29th day of October, 1866, having been protested for non-payment, said Petitt & Co. brought this suit against the drawers in the Louisville chancery court, and obtained an order of attachment against their property, which was levied, by the marshal of the court, on forty-six bales of cotton in the possession of the Louisville and Nashville Railroad Company, which had been shipped over said road by the Great Western All-rail Cotton Express by said Clark, Bigelow & Co. from Memphis, and consigned to Thayer, Bingham & Co., of Boston, Massachusetts.
The First National Bank of Memphis was, on its petition, made a party to the action, and claimed the cotton, or a lien thereon paramount to that acquired by the levy of the attachment, on the grounds that said Clark, Bigelow & Co., being the owners of said cotton, and desirin'g to obtain money on the faith thereof, had produced to said bank the bills of lading of said express company, showing that it had received the cotton and undertaken to transport it to said Thayer, Bingham & Co., together with a letter of said consignees, authorizing said Clark, Bigelow & Co. to draw on them for part of the value of the cotton, and deposited said bills of lading and letter of credit with the bank for the purpose of transferring the cotton to the bank; and that, on the faith and security thereof, said bank discounted and advanced to said Clark, Bigelow & Co. the proceeds of two bills of exchange drawn by them on their said consignees, one of them being for three thousand six hundred and fifty dollars and the other for two thousand three hundred dollars, which were protested for non-payment in consequence of the detention of the cotton under the levy of said attachment.
*337 To prevent loss or deterioration in the value of the cotton, the court ordered it to be sold during the pend-ency of the suit, and finally adjudged to the bank the entire proceeds of the sales, which were insufficient to pay the debt of the bank. From that judgment Petitt & Co. have appealed to this court.
The material facts alleged and relied upon by the bank were, we think, sufficiently proved; and although one of its principal witnesses, C. P. Norris, appears to have been largely interested as a stockholder in the bank, according to section 675 of the Civil Code he appears to have been a competent witness (Covington and Lexington Railroad Company vs. Ingles, 15 B. Mon., 641; Lackey vs. Richmond and Lancaster Turnpike Road Company, 17 B. Mon., 48); and however the interest of the witness might be regarded as affecting his credit, we think the court rightly-overruled the exception to his deposition, and especially so, as he is shown to have been indemnified against loss, by the result of the suit, by the corporation of which he was a member.
The main and controlling question presented for our determination is, whether the deposit of the bills of lading with the bank without assignment or other writing, and without actual delivery of the cotton, was a sufficient transfer to pledge the cotton to the bank as security for the payment of the money they advanced to Clark, Bigelow & Co., on their drafts on Thayer, Bingham & Co., and upon the faith of the security so given.
The general principle, that where there is an absolute sale of personal property, capable of delivery, the possession must accompany the title, to render the sale effectual as to creditors, is well established; and it may be conceded that ordinarily, to create a valid lien on personal *338 property by pledging it as security for a debt, a delivery of the property must be made..
Indeed, it is essential to the existence of a pledge that the pledgee should have actual or constructive possession of the property pledged.-
But to constitute a valid lien by a pledge of property, it is not necessary that the legal title should be trans ferred as in the case of a mortgage; on the contrary, the title generally remains in the pledgor. (Parson's on Contracts, vol. 2, page 113.) The question is not, therefore, whether the deposit of the bills of lading was effectual to pass the legal title to the cotton, but whether it was a constructive or symbolic delivery of the cotton.
By the law merchant bills of lading are, to a certain extent, treated as negotiable instruments. In the hands of the original owner they generally represent his title to the property, at least until it comes to the possession of the consignee; and under certain circumstances the owner may, by his mere indorsement of a bill of lading, pass to a purchaser the absolute property for which it is given. Why may it not be used as the symbol of property for the purpose of making an effectual constructive delivery of the possession, as was intended by the deposit of the bills in this case ?
In cases of gifts as well as ordinary sales of property, where it is inconvenient or impractical to make an actual delivery, it may be constructively made, and by such acts as the nature and situation of the property may require to effectuate the intention of the parties, as by delivering a part for the whole, or the key of a house in which the property is stored, or marking timber on a wharf or goods in a warehouse, or, if the property is in the hands of a bailee, by an order to him for the possession. (1, Parsons, supra, 530.)
*339 In this case, allhough the nature of the transaction does not import an absolute sale and transfer of the title to the property, nor more than the creation of a special property in the cotton as security for the money advanced by the bank, we are of the opinion that the deposit of the bills of lading was effectual for the latter purpose, and the lien so acquired by the bank was paramount to that created by the levy of the appellants’ attachment, and the chancellor rightly so adjudged.
Wherefore, the judgment is affirmed.