CASE 27—PETITION EQUITY—OCTOBER 18.

# Douglas, Receiver, v. People's Bank of Ky.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. BILLS OF LADING.—A bill of lading does not possess the characteristics of bills of exchange or other negotiable instruments placed upon the footing of bills of exchange. When it is said that a bill of lading is negotiable, it is only meant that its true owner may transfer it by indorsement or assignment, so as to vest the legal title in the assignee.

2. SAME—PLEDGE.—The owner of a bill of lading may pledge it as collateral security for a debt, the transfer of the bill of lading being regarded as equivalent to investing the pledgee with the actual possession of the property, which is essential to the validity of a pledge. The pledgee, however, does not acquire title to the property, but merely a lien, which as long as he retains possession of the property, either actual or symbolical, is paramount to, and will prevail against any prior equities of third parties of which he had no notice, or of which he was not required by law to take notice.

3. SAME—LIABILITY OF CARRIER.—Where, by the terms of a bill of lading, the property mentioned in it is made deliverable to the shipper's order, the carrier has no right to deliver it to the consignee or any other person unless he manifests his right to the property by the exhibition of the bill of lading indorsed by the shipper; and if the carrier does so, it renders itself liable to the true owner of the property, or to one having the actual possession of the bills of lading as collateral security for the value of the property. If, however, the pledgee of bills of lading, by his conduct, enables the pledgor to obtain possession of the bills and exhibit them as his own, and the pledgor thereby obtains the delivery of the property to himself, the pledgee is without remedy against the carrier.

In this case the court is of the opinion that it sufficiently appears that the property represented by bills of lading which had been pledged to the appellee by consignees, the legal owners of the property, was delivered to the consignees upon the presentation of the bills of lading, properly indorsed, of which they had been enabled to obtain possession by the conduct and authority of appellee; and, therefore, the appellee is without remedy against the carrier.

RAMSEY, MAXWELL & MATTHEWS FOR APPELLANT.

1. A money judgment in an equitable action to enforce a lien is not allowable unless there is a clear equitable jurisdiction at the beginning of

the action and subsequent circumstances render it impossible to give equitable relief. (St. Clair v. Cox, 106 U. S., 351; D'Arcy v. Ketchum 11 How., 137.)

2. The receiver being an officer of the court can not be sued without its leave. (Barton v. Barbour, 104 U. S., 126.)

3. A bill of lading is not negotiable. It passes by delivery, but confers no better title on the assignee than that of the assignor. (Schooner Freeman v. Buckingham, 18 How., 182; Pollard v. Vinton, 105 U. S., 7; Wilkins v. B. & O. R. R. Co., 44 Md.; Robinson v. R. R. Co., 9 Fed. Rep., 129; Dean v. King, 22 O. S., 118; Emery v. Bank, 25 O. S., 360; 2 Daniels' Neg. Instr., sec. 1727; Lady Franklin, 8 Wall., 325; Fellows v. Powell, 16 La. An., 316; Bank v. Lavalle, 52 Mo., 380; Sears v. Wingate, 3 Allen, 103; Hutchinson on Carriers, section 129; Shaw v. Spencer, 100 Mass., 382; Pettit v. Bank, 4 Bush, 334; Shaw v. R. R. Co., 101 U. S., 557.)

4. Estoppel never arises upon the mere recitals of a non-negotiable instrument. (N. Y., &c., R. R. Co. v. Mechanics' Bank, 13 N. Y., 525; Bank v. Walbridge, 19 O. S., 419.)

5. Affording another an opportunity to perpetrate a fraud is not actionable negligence. (Lowry v. Telegraph Co., 60 N. Y., 198; Bank v. Telegraph Co., 30 O. S., 535; Mussey v. Beecher, 3 Cush., 511.)

6. It is not negligence to rely upon the integrity of a person of good character. (Baxendale v. Bennett, 3 Q. B. D., 525; Lehman v. R. R., 14 Rep., 165; Angell & A., sec. 314.)

7. Mere negligence never creates *estoppel in pais*. (Bd. Ed. v. Sinton, 41 Ohio S., 504.)

CHARLES H. GIBSON on same side.

Cites: Benjamin on Sales, chap. 6, B. 2; Hutchinson on Carriers, section 130.

WM. LINDSAY and E. E. McKAY for appellee.

1. Failure to move to transfer from equity docket to common law docket is equivalent to consent that the chancellor may try the legal issues without a jury. (P. C. & St. L. R. R. Co. v. Wooley, 12 Bush, 452.)

2. In common law action technical accuracy in prayer for relief is not necessary (Bates v. Buchanan, 2 Bush, 117.)

3. A bill of lading is assignable so as to vest in the assignee all the rights of the assignor. (M. & B. Co. v. Cabell, 10 Bush, 470; Sutherland v Nat. Bank, 78 Ky., 253; Hutchinson on Carriers, sec. 130; Daniels on Negotiable Inst., vol. 2, p. 671; Newcomb v. R Co., 115 Mass., 230.)

4. On failure to move to transfer to common law an issue of fact tried by chancellor is treated as the verdict of a properly instructed jury. (P. C. & St. L. R. Co. v. Wooley, 12 Bush, 453; Froley v. Peters, 12 Bush, 469.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee brought suit in the Louisville Chancery Court against the appellant and the firm of Moise, Barbour & Co., partners in the grain business, in the city of Louisville. The appellee sought by the suit to recover judgment against the firm of Moise, Barbour. & Co. on a note for five thousand dollars, which the firm executed to the appellee. The appellee also sought to recover judgment against the appellant for the value of corn and rye, the title to which was evidenced by six bills of lading, executed by the appellant as a common carrier, by which the appellant undertook to deliver to the firm of Moise, Barbour & Co., in the city of Louisville, the grain mentioned in the bills of lading. Each bill of lading shows that the grain therein mentioned was shipped to the order of the shipper, per advice of Moise, Barbour & Co., and each bill of lading was indorsed by the shipper, and that the firm of Moise, Barbour & Co. was the owner of each of them. It was alleged by the appellee that Moise, Barbour & Co., while they were the owners of these bills of lading, transferred and delivered them to it in pledge as collateral security to the above-named note; and that the note was due and unpaid; and that the appellant refused to deliver the grain to the appellee. The appellee, upon the foregoing allegations, asserted its lien upon the grain, and sought judgment against the appellant for its value. The appellant put in issue the allegations of the appellee in reference to these matters, and a trial of the case resulted in a judgment against the appellant for the value of the grain. This appeal is prosecuted from that judgment.

A bill of lading does not possess the characteristics of bills of exchange or other negotiable instruments placed upon the footing of bills of exchange. The peculiar characteristics of these instruments rest either upon statute or commercial usage, sanctioned by express decision. A bill of lading has neither of these foundations to rest upon. It does not represent money, but property. No one ever supposed that a written obligation to pay so much in property, or to deliver such and such property, possessed the characteristics of negotiability in the sense of a bill of exchange, or other instrument placed upon the footing of a bill of exchange.

Such instruments represent money in commercial usage, and the innocent holder for value in the usual course of trade is protected against all equities of the antecedent parties. Nor is such innocent holder's right affected by any infirmity in such instruments. They are protected in some cases against the claim of the rightful owner; whereas, the indorsee or assignee of a bill of lading, which is made to the order of the shipper, must trace his title back to its true owner. He has no greater right than the true owner.

When it is said that such a bill of lading is negotiable, it is only meant that its true owner may transfer it by indorsement or assignment so as to vest the legal title in the indorsee. (See Pollard v. Vinton, 105 U. S., page 7.)

A sale and delivery of personal property by the owner perfects the title in the vendee. He thereby acquires a right to the property which is superior to antecedent equities and liens of which he had no actual

notice, or such notice as the law requires him to take cognizance of.

Both a contract of sale and delivery of personal property are necessary to the completion of title in the vendee. He thereby acquires a right to the property which is superior to antecedent equities, liens or executory sales as between the vendor and third persons, of which he had, at the time of his purchase, no actual notice, or such notice as the law requires him to take cognizance of. And where the property is in transit by the carrier, the owner may deliver it to the purchaser symbolically. This may be done by the owner's indorsement of the bill of lading to the purchaser.

It is said in Newsom v. Thornton, 6 East, 41, that "a bill of lading will pass the property upon a *bona fide* indorsement and delivery, when it is intended so to operate, in the same manner as a direct delivery of the goods themselves would do, if so intended. But it can not go further." In Hatfield v. Phillips, 9 M. & W., 648, it is said: "As soon as the goods are landed and warehoused in the name of the holder, that holder then becomes possessed of the goods themselves in the eye of the law, and derives his power, not from the bill of lading, but from such possession." But while the cargo is still at sea, or the transit continues in any other form, the bill of lading stands for and represents the goods themselves, and will, therefore, enable the assignee to do as much, but no more, than he could have done if they had actually arrived and come to his possession. In Meyerstein v. Barber, 2 L. R. C. P., 38 and 45, it is said: "The bill of lading represents them (the goods),

and the indorsement and delivery of the bill of lading operate exactly the same as a delivery of the goods themselves to the assignee, after the ship's arrival, would do."

So, the assignment of a bill of lading for value, while the goods are in transit, is limited to the effect of symbolizing their sale and delivery, and the assignee is thereby invested with all the rights of a purchaser with actual delivery of possession, but no more. It is also well-settled that the owner of a bill of lading may pledge the same as collateral security for a debt; and as it is indispensable to the validity of a pledge that the actual possession of the property pledged should pass to the pledgee, the possession of the property which is sought to be pledged while it is in transit may be effected by transferring the bill of lading. Such transfer of the bill of lading is regarded as equivalent to investing the pledgee with the actual possession of the property. Such pledge does not invest the pledgee with title to the property; the title remains in the pledgeor; but the pledgee acquires a lien upon the property for the security of his debt; and this lien, as long as he retains the possession of the property—either actual or symbolical—is a legal lien, which is paramount to, and will, therefore, prevail against, any prior equities existing on behalf of third parties, of which the pledgee had no notice, or of which he was not required by law to take notice. (Pettit & Co. v. First National Bank of Memphis, 4 Bush, 338.)

As before stated, the grain mentioned in the six bills of lading in controversy was made, by the terms of the bills of lading, deliverable to the shipper's order.

Therefore, the title to the grain did not pass to the consignees, Moise, Barbour & Co., but remained in the shipper ; and he could only pass his title to the grain to the consignees by an indorsement of the bills of lading. And the appellant, the railroad company, had not the right to deliver the grain to the consignees or any one else, except upon the order of the shipper. The shipper reserved to himself the right of property in the grain, and the railroad company undertook to transport it as his property, and to deliver it only upon his order. And it was the contract duty of the railroad company so to do ; and if the company delivered the grain to Moise, Barbour & Co. without their being the owners of it, which fact should be established by the exhibition of the bills showing that they were the owners of them by the indorsement of the shipper, the company thereby rendered itself liable to the true owner of the grain for its value. (Daniel on Negotiable Instruments, volume 2, section 1740 ; Hutchinson on Carriers, sections 130, 133.)

The appellant, the railroad company, delivered the grain to Moise, Barbour & Co.; and there is no doubt that, at the time of the delivery, they were the owners of the grain which the bills of lading represented. The appellee concedes this fact, but it contends that, at the time of the delivery, it was in the actual possession of the bills of lading, and was the owner of them as pledgee for the security of Moise, Barbour & Co.'s indebtedness to it, whereby it had a lien on the grain itself to secure said indebtedness.

If it be true that, at the time the railroad company delivered the grain to Moise, Barbour & Co., the appel-

lee held the actual possession of these bills of lading in  pledge for the security of their indebtedness to it, and the railroad company delivered the grain to Moise, Barbour & Co. notwithstanding that fact, and without requiring them to show by the production of the bills of lading that they were the owners of the grain, they are, in that case, liable to the appellee for its value. On the other hand, if the grain was delivered to Moise, Barbour & Co. by their exhibiting the bills of lading to the railroad company, which showed that they were the owners of them and entitled to them, and that Moise, Barbour & Co. were enabled, by the conduct of the appellee, to thus exhibit said bills as their own, for the purpose of obtaining the delivery of the grain to themselves, and whereby they did obtain its delivery to themselves, then the appellee should not be allowed to recover the value of the grain from the appellant.

The railroad company's cashier swears that the company's place of switching its freight trains was in Jeffersonville, where the freight remained until orders were received where to deliver it. That the bills of lading were presented by Moise, Barbour & Co. at the window of the cashier's office, and the numbers of the cars transcribed from the bills of lading to the books of the company, and the cars ordered over to Louisville, and the grain there delivered. While the cashier swears that he could not remember that these identical bills were presented at the cashier's office by Moise, Barbour & Co., yet, he is positive that they were so presented, properly indorsed, for the reason that all bills of lading, made to order of the shipper, were required to be exhibited, properly indorsed, before the company would

deliver the grain. And that a memorandum of each car
containing the grain was taken directly from each bill
of lading, from which memorandum the car was ordered
over to Louisville. And while unable to recall to mem-
ory the particular bills of lading in controversy, he re-
members that no grain was delivered to Moise, Barbour
& Co. on bills of lading requiring the grain to be deliv-
ered to the order of the shipper, unless they presented
the bills properly indorsed. The chancellor was of the
opinion that the cashier of the company was mistaken
as to these particular bills of lading having been present-
ed by Moise, Barbour & Co. We think the evidence
in the case fails to show a different state of case. The
cashier's evidence is strong, consistent and direct, and is
circumstantially corroborated by the evidence of the
appellee's cashier. He swears that it was the agreement
between the appellee and Moise, Barbour & Co. that the
latter might withdraw the bills of lading deposited from
time to time, by depositing other bills of lading of equal
value in their place. The object of allowing the with-
drawals and substitutions was to enable Moise, Barbour
& Co. to receive the freight on the bills of lading with-
drawn. He also swears that not only Moise, Barbour &
Co., but their clerk, came to the bank whenever it
suited them, took the bills of lading in hand, and made
such withdrawals and substitutions as they saw proper,
without the supervision of any of the bank officers,
and without their knowledge of what bills of lading
were withdrawn, or what left in their place, if any. So,
we have no proof that these bills of lading were in the
actual possession of the appellee at the respective times
the grain was delivered, but we have proof that Moise,

Barbour & Co. had the appellee's authority to withdraw these bills of lading for the purpose of receiving the freight that they represented. We also have proof that they and their clerk handled the bills of lading at pleasure, and made such changes as they pleased. It also appears that they had the opportunity, furnished by the appellee, to withdraw these bills for the purpose of receiving the freight thereon, and then return them. With these facts before us, we find nothing in the record that directly, or by necessary implication, contradicts the evidence of the company's cashier. While it may be admitted that the railroad company was not punctiliously exact in its dealing with Moise, Barbour & Co. as to the delivery of the grain, yet, it may be regarded as an established fact that the bills of lading, properly indorsed, were presented to the company by Moise, Barbour & Co., who were in fact the legal owners of the grain which the bills represented, but subject to the appellee's lien; and that the grain was delivered to them on the faith of the presentation of the bills of lading, properly indorsed, and the apparent ownership in Moise, Barbour & Co., and that the bills of lading were presented and the grain delivered by the conduct and authority of the appellee. Therefore, the proposition to allow the appellee to recover the value of the grain from the appellant, under these circumstances, contains no element of fair dealing, no equity, no legal right.

The appellee is estopped to gainsay and undo what was authorized and sanctioned by its conduct.

The judgment of the lower court is reversed, and the case is remanded with directions to dismiss the appellee's petition.