CASE 39—ACTION BY M. SABEL & SON AGAINST B. D. CHALKLEY & Co.
TO SUBJECT BY ATTACHMENT A LOT OF HIDES IN PAYMENT OF A
DEBT OF PLAINTIFFS AGAINST DEFENDANTS—MARCH 15.

# Sabel, &c., v. Planters National Bank of Richmond, Va.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT SUSTAINING CLAIM OF PLANTERS NAT. BANK OF RICHMOND,
VA., TO ATTACHED PROPERTY, AND PLAINTIFF APPEALS.   AFFIRMED.

ATTACHMENT—PROPERTY IN POSSESSION OF PLEDGEE—CONSTRUCTIVE
POSSESSION—DELIVERY OF BILL OF LADING.

Held:   Property in possession of a pledgee can not be levied on
under attachment for the pledgor's debts, and therefore, where
a bank discounted a draft for the price of goods, to which a
bill of lading for the goods was attached, the goods, upon the
refusal of the consignees to receive them, could not be levied
on under attachments in favor of the consignor's creditors, be·
ing in the constructive possession of, the bank as pledgee, and
so such attaching creditors can not require the bank to look to
other property upon which it has a lien for the payment of its
debt.

ALFRED SELLIGMAN, ATTORNEY FOR M. SABEL & SONS.

### POINTS MADE AND AUTHORITIES. CITED.

1. M. Sabel & Sons, having a claim against B. D. Chalkley & Co.,
of Richmond, Va., instituted this action thereon against him
in the Jefferson Circuit Court. The attachment issuing therein
was executed *inter alia* on ten bales of dry hides in the L. &
N. Depot at Louisville, Ky., consigned by Chalkley to his own
order, L. Marx & Bro., to be notified. A draft, with bill of lading
attached, though accepted by said Marx, was returned unpaid.
The attachment was sustained, but before sale, the Planters Na-
tional Bank filed a "claim and delivery" therefor, asserting
ownership by reason of having advanced money on the draft
above referred to.

2. The evidence shows (a) that the bank took the draft with all re-
course on Chalkley, (b) and as we insist, only for collection;
(c) certainly not as absolute purchaser, but as collateral se-
curity, and admits having had ever since protest of the Marx

note and the attachment by Sabel of Marx hides, and after re-
ceiving knowledge thereof, in their possession and control and
credited to Chalkley on the books of the bank funds more than
sufficient to protect and pay themselves the amount of the ad-
vance.

3. If the bank took the draft on the credit of Chalkley and for col-
lection, though they credited him with the amount of the draft,
immediately upon default by the acceptors, it was the right and
duty of the bank to cancel the credit and charge back the amount
of the draft to the account of Chalkley, sufficient money being
on hand to cover the same. Armstrong, Recv., v. Natl. Bank of
Boyertown, 90 Ky., 430.

4. Even if the bank acquired title to the draft of Chalkley on
L. Marx & Bro., whether by purchase or advances, they acquired
no title whatever to the bill of lading or the hides represented
thereby, but acquired only a lien. The bill of lading passed to
them merely as a collateral security. "The test of a pledge be-
ing that, if the debt is absolutely extinguished by the transfer,
in whole or *pro tanto*, the transfer is a sale; if not, it is only a
pledge." Benjamin on Sales (1892), p. 9; Colebrook on Collater-
al Security, sec. 380, *et seq.*; Douglas, Recv., v. Peoples Bk. of
Ky., 86 Ky., 176; Pettit & Co. v. First Natl. Bk. of Memphis, 4
Bush, 334.

5. The bank has a lien on the balance in its hand to the credit of
its debtor to secure it against a loss on matured obligations.
Morse on Banks and Banking, vol. 1, sec. 324; Mt. Sterling
Nat. Bk. v. Greene, 99 Ky., 262; Masonic Savings Bank v. Bangs,
8 Ky. Law Rep., 19.

Control of such funds amounts to a payment. This lien is not
alone for the protection of the bank, but they will be required to
assert it, where failure to do so would work an injury to a third
party. Faulkner v. Cumberland Valley Bank, 14 Ky. Law Rep.,
923.

Taking other security does not affect the bank's lien. Masonic
Savings Bank v. Bangs, *supra*.

6. The Planters National Bank, if not actually paid, has two liens
to secure it, one on the balance in its own hands, the other on
the hides in Louisville, on which M. Sabel & Sons have a lien
by attachment that has been sustained and which is their only
security.

The court will in such a case marshall the securities.

7. The court will marshall in favor of an attachment lien. The at-
tachment creates a "lien" in the full sense of the word. The
nature of the lien is not essential. The doctrine is enforced to
prevent a common debtor from exonerating his singly charged

estate from both debts. South v. Bradstreet, 16 Pick (Mass.), 264; Am. & Eng. Ency. of Law (2d ed.), vol. 3, p. 218; Am. & Eng. Ency. of Law (2b ed.), vol. 14, pp. 686-711; Kittredge v. Warren, 14 N. H. Rep., 509; Pearce, Tolle & Holton v. Hall, 12 Bush, 209; Nutter et al. v. Connett, 3 B. M., 198. Distinguishing Meyer v. Scharf, 34 S. W. Rep., 858.

ARTHUR M. RUTLEDGE, FOR APPELLEE.

## POINTS AND AUTHORITIES.

1. When goods are shipped, and the bill of lading is taken, to the consignor's own order, title to the goods does not pass to the consignee on delivery to the carrier, but remains in the consignor. Kentucky Refining Co. v. Globe Refining Co., 20 Ky. Law Rep., 778.

2. While bills of lading are not negotiable in the strict sense of that term, yet by the law merchant they are *quasi* negotiable; and an endorsement for value may transfer to the endorsee the possession and absolute property of the endorser in the goods covered by the bill. Pett & Co. v. First Nat. Bk. of Memphis, 4 Bush, 338; Colebrook on Collateral Securities (2d ed.), secs. 375, 379 and 380; Jones on Liens (2d ed.), sec. 824; Am. & Eng. Ency. of Law (1st ed.), vol. 2, p. 243; Dnylass, Recv., &c., v. Peoples Bk., 86 Ky., 180 and 181; L. & N. R. R. v. Hartwell, 18 Ky. Law Rep., 745; The Thames Case, 14 Wall., 98; Chandler v. Belden, 9 Am. Dec., 193; Rowley v. Bigelow, 23 Am. Dec., 612; Shaw v. Railroad Co., 101 U. S., 561

3. The holder of an endorsed bill of lading can maintain replevin for the goods. Bank of Green Bay v. Dearborn, 115 Mass., 219; Fifth Natl. Bk. v. Bayley, 115 Mass., 228.

4. The lien of a bank holding even an unendorsed bill of lading is superior to the lien of an attaching creditor. Petitt & Co. v. First Nat. Bk., &c., 4 Bush, 338.

5. A bank holding a depositor's note or draft is under no obligation to appropriate the depositor's funds to its payment, should payment of the note at maturity, or of the draft on presentation be refused. Neill et al. v. Rogers Bros. Produce Co., 23 S. E. Rep., 704 and 705; Moss on Banking, sec. 559.

6. While a bank has a general lien upon the funds and securities of its depositor to meet any balance due it on general account, yet this lien may be lost or waivered, as where securities are deposited for a special purpose, or where the conduct of the parties is inconsistent with the reservation of a general lien. Duncan v. Brannan, &c., 83 N. Y., 487; Neponset v. Leland, 5 Met. (Mass.), 262; Story on Agency, sec. 381; Colebrook on Collateral

Security, sec. 62; Jones on Liens, vol. 1, secs. 244 and 251; Wycoff v. Anthony, &c., 90 N. Y., 488.

7. The acceptance by a bank of collateral security for the payment of a note is a waiver of its lien upon the debtor's deposit. Farmers National Bk. v. McFerran, Admr., 11 Ky. Law Rep., 183.

8. An attaching creditor who levies upon goods for which a bank at the time holds an endorsed bill of lading given to secure a draft executed to it by the debtor, is in no position to demand a marshalling of liens or securities, though the bank had on deposit funds sufficient to pay the draft. Sarff, &c., v. Meyer, &c., 34 S. W. Rep., 858.

9. A creditor can acquire by attachment no greater right in the attached property than the debtor had at the time of the attachment; and if before the attachment the debtor had assigned to a holder for value a bill of lading covering the attached property, the creditor would take nothing by his attachment, the debtor's right both of property and possession having passed under the assignment. Neill, &c., v. Rogers Bros. Produce Co., 23 S. E. Rep., 710; Drake on Attachments, sec. 245.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

B. D. Chalkley & Co., who are merchants at Richmond, Va., received an order from L. Marx & Bro., merchants at Louisville, Ky., for ten bales of dry hides. Chalkley & Co. shipped the hides to Louisville, and took a bill of lading consigning the hides to their own order. They then drew a draft on Marx & Bro. for $1,735.66, the amount for which the hides were sold, and sold the draft to the appellee, the Planters' National Bank of Virginia, with the bill of lading attached. At the foot of the bill of lading was this indorsement: "L. Marx & Bro. to be notified." The bank forwarded the draft, with the bill of lading attached, to its correspondent at Louisville for collection on its own account, having paid Chalkley & Co. the amount of it, less the discount. When the hides reached Louisville, Marx & Bro. refused to receive them on the ground that they did not come up to the sample; and while the hides were lying in the railroad depot they were attached by M. Sabel &

Sons for a debt due them by Chalkley & Co., as the property of Chalkley & Co. The bank intervened in the suit, setting up the foregoing facts, and claiming the hides. It was shown by the evidence that Chalkley & Co. were customers of the bank, and deposited with them; that the amount paid for the draft was credited to their account, and checked out by them soon thereafter; but it also appeared that they deposited other money with the bank from time to time, and when the proof was taken had a balance to their credit as large as the amount of the draft. The court below adjudged the hides to the bank, and it is insisted by appellants that this was error, for the reason that the bank had only a lien on the hides to secure the amount due, and that, having in its hands other funds of Chalkley & Co. sufficient to cover the amount of the draft, it should, as between it and the attaching creditor in this State, who had a lien only on the hides, be compelled to look first to the funds already in its hands to protect itself. In other words, it is insisted that the doctrine should be applied that a creditor having a lien on two funds, one of which is covered by a junior lien, will be required to exhaust as against the junior lienholder the fund not covered by his lien before resorting to the other fund. On the other hand, it is insisted for the bank that it has legal rights to which this equitable doctrine does not apply. The question is not without difficulty, and its proper solution depends upon the rights acquired by the bank under its contract and by appellants under their attachment. In Petitt v. Bank, 67 Ky., 338, this court, after showing that actual or constructive possession of the property pledged is essential to the existence of a pledge, said, in a case somewhat similar to this: "But, to constitute a valid lien by a pledge of property, it is not

necessary that the legal title should be transferred, as in the case of a mortgage; on the contrary, the title gener-ally remains in the pledgor. 2 Pars. Cont., p. 113. The question is not, therefore, whether the deposit of the bills of lading was effectual to pass the legal title to the cot-ton, but whether it was a constructive or symbolic delivery of the cotton. By the law merchant, bills of lading are, to a certain extent, treated as negotiable instruments. In the hands of the original owner they generally represent his title to the property, at least until it comes to the pos-session of the consignee; and under certain circumstances the owner may, by his mere indorsement of a bill of lading, pass to a purchaser the absolute property for which it is given." This case was followed in Douglas v. Bank, 86 Ky., 176, (5 S. W., 420), where the validity of a pledge created by the delivery of a bill of lading was upheld. These cases are in accord with the current of authority. See Coleb. Coll., secs. 379, 380; Jones, Liens (2d Ed.) 824; 12 Am. & Eng. Ency. Law, p. 243. The evidence does not show that the bank bought the hides. It simply took the bill of lad-ing to secure the draft to which it was attached. The only interest the bank had in the matter was the payment of the draft, and to secure it in this the ten bales of hides were pledged, and symbolically delivered to it by the delivery of the bill of lading. The hides did not sell for enough to pay the draft. It remains, therefore, to determine what rights, if any, appellants acquired in the hides by the levy of their attachment. In Drake, Attachm., sec. 245, the rule is thus stated: "A fundamental principle is that an attaching creditor can acquire no greater right in attached property than the defendant has at the time of the attachment. If, therefore, the property be in such a situation that the de-fendant has lost his power over it, or has not yet acquired

such interest in or power over it as to permit him to dispose of it adversely to others, it can not be attached for his debt. Thus a chattel pawned . . . is not attachable in an action against the pawnor." To same effect, see Am. & Eng. Ency. Law (2d Ed.) 231. This rule was recently followed by this court in Newman v. Mantle, 58 S. W., 783. Under these authorities, the hides, being in the constructive possession of the bank as pledgee, could not be levied upon under the attachment of appellees. They therefore acquired, by their attachment, no valid lien upon the property; and it was properly restored to the pledgee, from whom it had been wrongfully taken. Under facts substantially similar to those before us, the same question was recently determined by the Supreme Court of West Virginia in Neill v. Produce Co., 23 S. E., 702, and by the Supreme Court of Missouri in Scharff v. Meyer, 34 S. W., 858; and in both cases the superior right of the bank was upheld. We have been referred to no contrary authority on the precise question, and this ruling seems to us both sound and reasonable. A large part of the commercial business of the country is now done by means of bills of lading attached to drafts, as in this case; and, if the purchaser of such paper must take it subject to attachments, executions, or the like, against the original owner, the value of such paper for commercial purposes would be entirely destroyed. As the hides did not sell for enough to pay the draft, and there was no garnishment of the pledgee, the right to reach by garnishment any balance of the proceeds of the sale of the property after the payment of the debt is not presented. Judgment affirmed.

Petition by appellant for rehearing overruled.