## Hawkins v. Alfalfa Products Co., et al.

(Decided February 11, 1913.)

### Appeal from McCracken Circuit Court.

1. Bills of Lading—Transfer of—Rights of Transferee.—The transfer of a bill of lading is nothing more or less than a constructive delivery to the transferee of the goods mentioned in it. The transferee, with the bill of lading in his possession, has, in the eyes of the law, the possession of the goods until they are delivered to the consignee, but he is not to be made responsible for any violation of the contract between the buyer and the seller, or for any failure of the carrier to discharge its duty.

2. Bills of Lading—Transfer of to Secure Draft—Rights of Transferee.—The transfer of a bill of lading attached to a draft that has been discounted, with the bill of lading as collateral security, does not make the transferee either a guarantor or a warrantor of the quality or quantity of the goods, or impose on him the duty of undertaking that they will be delivered in good order. If they do not come up to the contract, the buyer must look to the seller for compensation or recoupment, and if they are damaged in transit by the fault of the carrier, he must look to the carrier for indemnity.

3. Bills of Lading—Right of Consignee Who Pays Draft with Bill of Lading Attached, to Damages for Breach of Contract.—In paying the draft and taking possession of the goods the right of the buyer to enforce compliance of his contract by the party with whom the contract was made is unimpaired, and to the party with whom the contract was made he must look for damages for its breach. He cannot attach the money he has paid for the draft, or sue the owner of the draft for damages for a breach of the contract, although the goods are not of the character or quality for which he contracted.

CAMPBELL & CAMPBELL, for appellant.

J. D. MOCQUOT, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, Hawkins, purchased from the appellee, Alfalfa Products Co., a Nebraska corporation, a car-

load of meal. The contract of purchase stipulated that the meal should be delivered to him in good order at Paducah, Kentucky. The Alfalfa Products Co. delivered in the state of Nebraska to the railroad company the carload of meal ordered by Hawkins and received from the railroad company a bill of lading therefor. This bill of lading showed that the meal was consigned to the Alfalfa Products Co., Paducah, Kentucky, and stipulated that H. P. Hawkins should be notified. In other words, it was that character of bill of lading commonly known as a "shipper's order bill of lading."

When the Alfalfa Company received from the railroad company the bill of lading, it drew its draft for $430, the purchase price of the meal, on H. P. Hawkins, payable to the Freemont National Bank and then attached the draft to the bill of lading and discounted the draft to the bank, with the bill of lading as collateral security. Hawkins paid to the bank in Paducah, to which the bill of lading and draft had been sent for collection by the Freemont bank, the amount of the draft and took possession of the bill of lading. After obtaining the bill of lading, which he could not secure until he paid the draft, he examined for the first time the carload of meal and discovered that it was worthless.

As the bill of lading stipulated that before the property covered by it was delivered to or inspected by the consignee the bill of lading should be surrendered to the carrier, Hawkins had no opportunity to learn of the condition of the meal until he obtained the bill of lading upon the payment of the draft; but when he discovered the worthless condition of the meal, he immediately brought suit against the Alfalfa Products Co. and the Freemont National Bank, and attached in the hands of the collecting bank the money he had paid it for the draft, his right to attach the proceeds of the draft being rested on the ground that the bank was responsible to him for the performance of his contract with the Alfalfa Co., and therefore liable to him in damages in the amount of the draft.

In answer to this suit the Freemont National Bank averred that it did not sell or deliver to Hawkins the carload of meal, and was not the owner, or in possession of the carload of meal at any time except as the owner and holder of the bill of lading given for same. It further averred, "That by virtue of the discounting and sale of said draft to it by the Alfalfa Products Co., it

had a lien upon the said carload of meal and upon the proceeds of said draft for the satisfaction and payment of the said sum of $429.55, paid by it in discounting of said draft and bill of lading. It further says that, at the time of the payment of the said draft on the 21st day of March, 1912, to the First National Bank of Paducah, by plaintiff, the plaintiff had no lien upon said carload of meal, or upon the proceeds of said draft, and that it did have a lien upon all of the proceeds of said draft and the money paid in satisfaction therefor for the sum of $429.55, which said lien was prior and superior to the claims of all persons whatsoever, including the plaintiff herein, and that it is entitled to the proceeds of the draft as against the attachment sued out by the plaintiff herein."

Some evidence was taken by the parties, but as there is really no issue of fact involved in the case, it is not necessary to notice the evidence. We may, however, observe that the evidence does not show that the bank had any information of the conditions of the contract between the Alfalfa Co. and Hawkins, or that there was any collusion or bad faith in the transaction so far as it was concerned. It simply discounted the draft and took the bill of lading as collateral security in the ordinary and usual course of banking business. It had no contract relations with reference to the meal with Hawkins or anything to do with the quantity or quality of the meal shipped to him by the Alfalfa Co.

When the case came on for hearing the court adjudged that the lien of the Freemont National Bank was superior to the attachment lien of Hawkins, and directed the garnishee to pay the proceeds of the draft to the Freemont bank. On this appeal it is insisted by counsel for Hawkins that the Freemont National Bank, in accepting the bill of lading, which not only transferred to it during transit the title but the constructive possession of the meal, obliged itself to deliver the meal according to the terms of the contract between Hawkins and the Alfalfa Products Co., or, in other words, assumed the contract and took the place of the Alfalfa Products Co. in the transaction, and hence Hawkins had the right to subject to his claim for damages for breach of contract the money he paid in satisfaction of the draft, to compensate him for the injury he sustained by the delivery to him of the worthless carload of meal.

For the Freemont National Bank the argument is

made, that it was not a party to the contract between Hawkins and the Alfalfa Co., and had nothing to do with and knew nothing about the condition of the carload of meal.

That it simply discounted the draft drawn by the Alfalfa Co. on Hawkins, which was secured by the pledge of the bill of lading. That it had no contractual relations with Hawkins, and did not warrant or guarantee the quantity or quality of the meal, or in any manner assume the performance of the contract.

If the Freemont National Bank, by its acceptance of the bill of lading as security for the money it advanced on the draft, put itself in the attitude of guaranteeing the contract made between Hawkins and the Alfalfa Co., or assumed the obligation of performing this contract, the attachment lien of Hawkins should be adjudged superior to the lien of the bank, as Hawkins was damaged by the breach in the amount paid for the draft.

On the other hand, if the acceptance by the Freemont National Bank of the bill of lading, as security for the money advanced on the draft, did not have the effect of substituting it to the obligations assumed by the Alfalfa Co. in its contract with Hawkins, or of creating any contract relations between it and Hawkins, except such as might arise in the collection of the draft, Hawkins could not rely on the breach of contract made with the Alfalfa Co. to defeat the collection of the draft, or look to the bank for compensation for the damage he sustained, his remedy being a suit against the Alfalfa Co.

The rights and liability of the assignee of a bill of lading with a draft attached, as in this case, have been before us several times, but in no one of the cases was the exact question here presented involved.

In Petitt & Co. v. First National Bank of Memphis, 4 Bush, 334, the controversy was between a bank that had discounted, for the consignor and seller of goods, a draft drawn on the purchaser and consignee, and taken the bill of lading for the goods as collateral security for the payment of the draft, and an attaching creditor of the consignor, who insisted that his attachment lien on the goods before their delivery to the consignee was superior to the lien of the bank holding the draft with the bill of lading attached. It was held that the lien of the bank holding the draft and bill of lading was superior to the lien of the attaching creditor.

Douglas, Receiver, v. Peoples Bank, 86 Ky., 176, involved a controversy between the carrier, and the holder of the bill of lading transferred to secure a draft discounted for the consignor, with the bill of lading as collateral security, and grew out of the fact that the carrier delivered the goods to a third party who presented to it as it claimed the bill of lading. In the course of the opinion the court, in discussing the character of bills of lading and the rights of the holders thereof, said:

"Such transfer of the bill of lading is regarded as equivalent to investing the pledgee with the actual possession of the property. Such pledge does not invest the pledgee with title to the property. The title remains in the pledgor. But the pledgee acquires a lien upon the property for the security of his debt, and this lien, as long as he retains possession of the property, either actual or symbolical, is a legal lien, which is paramount to and will therefore prevail against any prior equities existing on behalf of third parties, of which the pledgee had no notice, or of which he was not required by law to take notice."

In Sable v. Planters National Bank, 110 Ky., 299, the contest was between a bank to whom the consignor of goods had delivered the bill of lading as security for a draft, and a creditor, who had levied an attachment on the goods after they reached the point of destination but before they had been accepted by or delivered to the consignee. Holding that the lien of the bank was superior to that of the attaching creditor, the court said:

"The hides being in the constructive possession of the bank as pledgee, could not be levied upon under the attachment of appellees. They therefore acquired by their attachment no valid lien upon the property, and it was properly restored to the pledgee from whom it had been wrongfully taken."

In Temple National Bank v. Louisville Cotton Oil Co., 82 S. W., 253, the contest was also between a bank that had discounted a draft for the consignor, with the bill of lading attached, and a creditor of the consignor, who had levied an attachment on the goods described in the bill of lading, and it was again held that the lien of the bank was superior to the lien of the attaching creditor. A like conclusion was reached in Bank of New Roads v. Kentucky Refining Co., 85 S. W., 1103.

It will be observed that in all these cases, except the

Douglas case, the controversy was between an attaching creditor of the consignor and seller, and the owner of the draft, with the bill of lading attached, the issue being which had the prior equity. Here the contest is directly between the consignee and purchaser on the one side, and the owner and holder of the draft, with the bill of lading attached, on the other, and involves the contract relations between the purchaser and the transferee of the bill of lading.

While the cases we have referred to cannot be regarded as controlling the disposition of this case, there are many from other courts that do, but before referring to some of the representative cases that sustain the judgment below, we will notice the authorities relied on by counsel for Hawkins.

The principal case is Russell v. Smith Grain Co., 80 Miss. 688, 32 Sou. Rep. 287. The opinion in that case, which was rested entirely on the case of Landa v. Lattin Bros., 19 Texas Civil Appeals, 246, fully supports the position taken by counsel. In that case the Mississippi Court held that a bank buying a draft from the shipper, with a bill of lading attached to secure it, became responsible for the performance of the contract between the buyer and the seller of the goods mentioned in the bill of lading, and hence, when the buyer and consignee paid the draft and took possession of the goods, he had a right upon finding that they did not come up to the contract, to maintain an action against the holder and owner of the draft for a breach of his contract with the seller, and to attach the money he paid on the draft in the hands of the collecting bank to secure him in the damages growing out of the breach of the contract.

We find, however, that Landa v. Lattin Bros., was impliedly, if not expressly, overruled by the Texas court in S. Blaisdell, Jr., Co. v. Citizens National Bank of Tyler, 96, Texas, 626, 75 S. W., 292, 62 L. R. A., 968, 97 Am. St. Rep. 944. First National Bank of Chicago v. Mineral Wells & L. P. St. Ry. Co.——— Tex. ——, 133 S. W., 1099. In these cases the court held in substance that a bank in purchasing a draft with bill of lading attached, did not assume the contract between the seller and the buyer, or become responsible to the buyer for a breach of its conditions, and so the buyer could not maintain an action for a breach of his

contract against the owner of the draft, or attach the money he had paid for the draft.

The case of Finch v. Gregg, 126 N. C., 176, also relied on by counsel, was overruled in Mason v. Cotton Co., 148 N. C., 492, 18 L. R. A. (n. s.) 1221. Hass v. Citizens Bank, 144 Ala., 562, 1 L. R. A. (n. s.) 242, also giving support to the contention of counsel, was in effect overruled in Cosmos Cotton Co. v. First National Bank of Birmingham, 171 Ala., 392, 32 L. R. A., (n. s.) 1173.

The result of this change of position on the part of the Texas, North Carolina and Alabama courts puts these courts in line with the current of opinion, which is that the holder of the draft is not liable for a breach of the contract between the seller and the buyer, and cannot reclaim from the holder of the draft the money paid for it. This leaves the Mississippi court, so far as our investigation goes, alone in holding to the doctrine that, a bank discounting for the seller a draft with a bill of lading attached, assumes the position of the seller in his contract with the buyer, and becomes responsible to the buyer for the seller's breach of contract. Goetz v. Bank of Kansas City, 119 U. S., 551, 30 L. Ed., 514; Tollerton & Stetson Co. v. Anglo-California Bank, 112 Iowa, 706, 50 L. R. A., 777; Lewis v. Small, 117 Tenn., 153, 6 L. R. A., (n. s.) 887; Central Mercantile Co. v. Oklahoma State Bank, 83 Kan., 504, 33 L. R. A. (n. s.) 954.

But aside from the cases in conflict with the views announced by the Mississippi court, we are not disposed to adopt the reasoning of that court. We think the fundamental error in the position assumed by it consists in the fact that it seeks to make the transferee of the bill of lading liable for the performance of a contract that he had no part in making and no connection with. The transfer of the bill of lading does not transfer the contract between the seller and the buyer, or in any manner effect the rights of the parties to that contract. Cox v. Central R. R., 170 Mass., 129.

The transferee of a bill of lading only acquires title during transit to the goods for which the bill of lading was issued in the condition they were at the time of its issue. His acceptance of the bill of lading as security for a loan does not create any contract relation between him and the consignee, or make him either a guarantor or a warrantor of the quality or quantity of the goods,

or impose on him the duty of undertaking that they will be delivered in good order. In short, the transfer of a bill of lading is nothing more or less than a constructive delivery to the transferee of the goods mentioned in it. The transferee, with the bill of lading in his possession, has, in the eyes of the law, the possession of the goods until they are delivered to the consignee. The Carlos F. Roses, 177 U. S., 655, 44 Law Ed., 929; Means v. Bank of Randall, 146 U. S., 620, 36 Law Ed., 1107.

In paying the draft and taking possession of the goods the right of the buyer to enforce compliance with his contract by the party with whom the contract was made is unimpaired, and to the party with whom the contract was made he must look for damages for its breach. If the goods do not fulfill the contract, the buyer must look to the seller for compensation or recoupment, and if they are damaged in transit by the fault of the carrier, he must look to the carrier for indemnity. When the buyer in a case like this pays the draft, the transaction between him, and the owner and holder of the draft, is a closed incident. His acceptance of the draft creates a new and independent contract and the only one that exists between him and the bank, and when he has paid the draft this contract is fully executed and the bank released from all liability to him.

The buyer can neither attach the money paid on the draft nor maintain an action against the owner of the draft for a breach of the contract committed by the seller. Of course if the buyer could attach the money paid on the draft he could likewise, after paying the draft, and without seeking to hold the money by attachment, bring an independent action against the owner of the draft and substitute him to the full liability of the seller for a breach of the contract.

To impose upon the transferee of a bill of lading, who takes it in good faith, for a valuable consideration, the duty of fulfilling the contract between the seller and the buyer, would impair, if not destroy, the value of bills of lading as instruments of trade and commerce, in the transaction of which they play so useful a part. No bank would feel safe in advancing or lending money on a bill of lading if the law burdened it with the performance of the contract between the seller and the buyer that it was not a party to.

It may be true to some extent, as argued by counsel,

that if the buyer is compelled to pay the draft before he can obtain the attached bill of lading and inspect the goods, it will subject him to probable loss, and, in the case of a non-resident seller, leave him without a convenient forum in which to recover the damage he has sustained by the sellr's failure to deliver the goods according to contract. But this circumstance should not be permitted to lead to the adoption of a rule that would work infinitely more harm than the occasional damage resulting from a breach of the contract.

The judgment is affirmed.