## Peoples Savings Bank and Trust Company v. Klempner Brothers.

(Decided April 29, 1921.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Carriers—Possession of Consignee.—The possession of a carrier is ordinarily the possession of the consignee, but this is only a presumption and may be rebutted.

2. Shipping—Carriage of Goods—Bills of Lading—Pledge to Bank.— Whether the title and possession of property passes from the shipper to the consignee depends upon the purpose and intention of the shipper; in this case the shipper consigned certain merchandise to appellees in accordance with a previous agreement to ship same, to be applied on his debt, but he retained possession of the nonnegotiable bills of lading, and on the same day drew his draft on the consignees for the value of the property and attached the bills of lading to it and sold the draft to a bank. Under such circumstances neither the title nor the possession passed from the shipper, and the goods represented by the bills of lading were in pledge to the bank.

3.  Shipping—Title to Goods—Liens.—Appellees had no interest or
    equity in merchandise consigned to them, where the shipper re-
    tains the bill of lading and pledges it, and the title remaining in
    the shipper, his pledge of the same to the bank gave it a prior
    lien.

BASKIN & VAUGHN for appellant.

HUGH B. FLEECE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing on original and affirming on cross appeal.

On and prior to the 5th of September, 1918, Joseph
Schetzer was doing business at Memphis, Tenn., in the
name of Memphis Iron and Metal Co., and during the
same period Klempner Brothers of Louisville, Ky., were
engaged in business at that place.

Previous to that time there had been several busi-
ness transactions between them which resulted as of
that date in an indebtedness by Schetzer to Klempner
Brothers of something over one thousand dollars, and,
as alleged, Klempner Brothers bought from Schetzer two
carloads of merchandise to be shipped to them and ap-
plied upon such indebtedness.

On the first of November Schetzer shipped from
Memphis one carload of scrap iron and one carload of
Manchester bagging, consigned to Klempner Brothers at
Louisville. The bills of lading for these two carloads
of merchandise show Klempner Brothers to be the con-
signees and are what are known as straight or non-
negotiable bills of lading.

Although Klempner Brothers were designated as con-
signees in the bills of lading, on the day of shipment
Schetzer, still being in possession of the bills of lading,
went to appellant bank at Memphis and there drew his
draft on Klempner Brothers at Louisville for $1,400.00,
apparently what he conceived to be the value of the two
carloads of merchandise, and attached to the draft the
two bills of lading and then sold the draft with the two
bills to the appellant bank, which placed the face value
thereof, $1,400.00, to Schetzer's credit in the bank.

The draft with the two bills of lading attached was
forwarded in the usual course to Louisville and reached
there on the 5th of November, and Klempner Brothers
were so notified on that day by the Louisville bank, and
were again called up by phone by officers of the bank

on November 6th; and on that day one of the members of the firm went to the bank, inspected the draft and bills of lading and declined to pay same, assigning as a reason that the weights given in the bills were not proper. The draft was protested for non-payment, and about ten o'clock of that day one of the carloads of merchandise shipped from Memphis on the first of November was placed on a siding or switch in the yard of Klempner Brothers' place of business, and the other car reached there a few days later, and, in some way not explained in the record, Klempner Brothers, without being in possession of the bills of lading, got possession of and appropriated to their own use the contents of the two cars.

Subsequently, on the 22nd of November, while Schetzer was in Louisville, the draft remaining unpaid, Klempner Brothers and Schetzer had a full settlement, which showed Klempner Brothers indebted to Schetzer in the sum of $698.04, which they that day paid to him by check.

This is an action by the Memphis bank against Klempner Brothers on the draft, and the defense, in substance, is that on the 5th of September, 1918, while Schetzer was indebted to them, appellees bought from him two carloads of merchandise to be shipped to them at Louisville, and that at the time by agreement between them and Schetzer the two cars of merchandise were to be applied on the indebtedness of Schetzer, and that the two carloads of merchandise so shipped by Schetzer on November 1, 1918, were the two carloads of merchandise so purchased by them, and to be so applied, and were the same two carloads of merchandise represented by the two bills of lading attached to the draft upon which the plaintiff sued; and it is their theory that as they had previously purchased from Schetzer this identical merchandise to be applied to the payment of their debt, when Schetzer delivered the same to the carrier at Memphis consigned to them at Louisville, they became the owners of the merchandise and Schetzer no longer had any interest therein, and the bills of lading being non-negotiable, the plaintiff bank acquired no right or interest in the property represented by the bills of lading.

The lower court directed a verdict for the plaintiff for the value of the carload of Manchester bagging ap-

parently because the evidence showed the two carloads of merchandise contracted for by appellees to be applied on their debt were to be scrap iron, but directed a verdict for the defendant for the value of the one carload of scrap iron, and from the judgment on that verdict the plaintiff has a appealed and the defendant prosecutes a cross appeal.

Going to the heart of the controversy and brushing aside all collateral questions, the case must be determined upon the question whether the title to the merchandise in the two cars passed to Klempner Brothers upon their consignment to them by Schetzer on November 1st; for if the title passed to them notwithstanding they had never been in possession of the bills of lading, then the assignment of the bills of lading by Schetzer to the bank, and the attaching of them to the draft sold by Schetzer to the bank, gave to the bank no interest or title which Schetzer did not have. But if, on the contrary, the retention by Schetzer of the bills of lading, which represented the merchandise in the two cars, had the effect of retaining in him the title to the merchandise, then his assignment of the two bills of lading to the bank, attached as they were to the draft, operated as a pledge of the merchandise to the bank to secure payment of the draft, although the bills of lading were non-negotiable.

So that the whole question is, was the title to the merchandise in the cars in Klempner Brothers at the time Schetzer assigned the bills of lading to the bank, or did their retention by Schetzer retain the title in him?

In discussing this question we shall assume for the sake of argument that the one carload of scrap iron shipped on the first of November was part of the merchandise alleged to have been previously purchased by Klempner Brothers from Schetzer to be applied upon Schetzer's indebtedness to them, although that question is in issue, and it is claimed by appellant that there is no evidence to sustain it.

It is the rule that possession of personal property must be delivered either actually or symbolically before the title passes, and here the question is whether the possession of the carrier was the possession of the consignees, although the bills of lading, which are the evidence of title, were never delivered to them but were

retained by the shipper and pledged by him on the same day the shipment was made.

Presumptively the possession of the carrier is the possession of the consignee, but that is only a presumption and may be rebutted, and it is the claim of appellant here that it is positively and conclusively rebutted by the fact that the shipper, instead of sending the bills of lading to the consignees, not only retained them but pledged them, and thereby pledged the property which they represented to the bank to secure the payment of the draft; while, on the other hand, the appellees claim that they having previously purchased the merchandise under an agreement that it was to be applied to an existing indebtedness of the shipper, not only took upon its consignment to them the title, but the possession of the carrier was their possession.

Ordinarily the possession of a carrier is the possession of the consignee, but whether that is true or not depends upon the purpose and intention of the shipper, that is, whether the shipper intended to relinquish the right to dispose of the property in a different way or whether he intended that the absolute title and possession should pass from him. In this case if Schetzer had intended to comply with his agreement to ship the carload of scrap iron to appellees to be applied on his debt, he would not have retained possession of the bills of lading but would have promptly mailed them to appellees. The very fact that instead of mailing to them the bills of lading or delivering the same to some one for them, he on the same day of the shipment, while they were still in his possession, pledged them and the merchandise which they represented to the bank, is convincing that he had no intention of passing the title or possession of the merchandise to appellees until the draft was paid and they thereby got possession of the bills of lading.

In Hutchinson on Carriers, section 194, it is said:

"If, however, the circumstances are such that upon delivery of the goods to the carrier they become the property of the consignee, the carrier holds them as the agent of such consignee, and their destination cannot afterwards be changed without his consent. If, for instance, the consignee is the vendee of the goods, or if he has made advances upon them with the agreement that they shall be shipped to him to be sold in order that he

may retain the proceeds for his reimbursement, or if, being a creditor of the consignor, the goods are delivered to the carrier to be shipped to him in satisfaction of his debt according to a previous agreement to that effect, the title to the goods will vest in him upon delivery to the carrier, and if their destination is afterwards altered, except under such cricumstances as entitle a vendor to stop them *in transitu*, the carrier will become responsible to him for them. The legal presumption is that when goods are sent to a consignee, the title to them vests in him as soon as the shipment is made. It is solely, however, a question of intention or of agreement, and may be shown to be otherwise.''

In case of Freeman v. Kraemer, 65 N. W. (Minn.) 455, Freeman & Co., shipped to Stevenson at Duluth some merchandise in response to a letter from Stevenson offering certain prices for certain kinds of merchandise, and the shipment was consigned to Stevenson. Notwithstanding the merchandise was consigned to Stevenson, Freeman & Co. drew a draft on him for the price of the merchandise and attached to it the bill of lading, both being sent to a Duluth bank for collection. When the draft reached Duluth Stevenson refused to pay it because the car had not yet arrived, although, in fact, it had arrived, and the railroad company delivered the merchandise to Kraemer, who had bought the goods from Stevenson, the consignee. A peremptory instruction was given to find for the bank against Kraemer, and the court, in affirming that judgment, based its opinion wholly upon the intention of the shipper as ascertained from the facts which are strikingly similar to those in this case, and said:

''We are of the opinion that the order appealed from should be affirmed. It clearly and conclusively appears from the evidence that the sale or contemplated sale from plaintiff to Stevenson was to be a cash transaction. No *indicia* of ownership was given to Stevenson. On the contrary, the bills of lading were forwarded by plaintiff, with the drafts attached to them, in such a manner as to make the intended delivery of the bills to Stevenson concurrent with the payment of the drafts for the purchase price of the property. From the circumstances, it conclusively appears that plaintiff did not intend to vest the title to the property in Stevenson until the goods were paid for.''

In that case, as here, there was a contention by the defendant that as the *indicia* of ownership was conferred on the consignee the title had vested in him because the goods had been consigned to him, and in response to that contention the court said:

"Appellants contend that plaintiff had conferred *indicia* of ownership on Stevenson, and that this gave Stevenson power to vest title by estoppel in appellants. In view of the authorities just cited, it is hardly necessary to say that merely shipping the goods addressed to the consignee, while retaining the bills of lading, confers no *indicia* of ownership on the consignee."

Other authorities holding that the presumption, that a consignee is the owner of goods when delivered to the carrier, may be rebutted and the real intention of the shipper shown are: Judson v. Minneapolis & St. Louis R. R. Co., 154 N. W. 506; White & Co. v. Century Savings Bank, 229 Fed. (Iowa) 975; Pettitt & Co. v. First National Bank of Memphis, 4 Bush 334; Douglas, Receiver v. People's Bank, 86 Ky. 176; Hawkins v. Alfalfa Products Co., 152 Ky. 152; Emery's Sons v. Irving National Bank, 25 Ohio St. Rep. 360; Bank of Rochester v. Jones, 4 N. Y. (Comstock) 497.

It is our conclusion, therefore, that although there had been a previous agreement by Schetzer to ship to Klempner Brothers the two carloads of merchandise to be applied on his indebtedness to them, his retention of the bills of lading and his pledge of the same to the bank on that day, not only furnish conclusive evidence that he did not intend either the title or the possession of the goods to vest in Klempner Brothers until the draft was paid, but that he intended to keep the title in himself for the benefit of the bank and to pledge the merchandise represented by the bills of lading for the payment of the draft.

Prior to the shipment Schetzer had both title to and possession of the merchandise; he might have sold it and applied the proceeds to his indebtedness to Klempner Brothers, or he might have kept or otherwise have used the money. Klempner Brothers had no interest or equity in the same prior to that time; all they had was Schetzer's promise to ship same to them to be applied on his debt, and since the goods remained in Schetzer's possession, he might have complied with his

promise to them or he might have disposed of the goods to others.

It cannot be denied that on the day he shipped them Schetzer might have mortgaged the goods to the bank and that Klempner Brothers could not have successfully asserted claim to the goods as against the bank; but what he did, in fact, was only to adopt a different method of putting them in lien to the bank.

There should have been a directed verdict for the plaintiff for the full value of the merchandise in the two cars.

It therefore results that the judgment is affirmed on the cross appeal and reversed on the original appeal for proceedings consistent herewith.