### BARTLETT & LUCAS ET AL. v. S. A. BISBEY ET AL.

Decided December 17, 1901.

**1.—Contract—Breach—Inevitable Accident.**

Where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding inevitable accidents, since he could have provided against such accidents in his contract if he had chosen so to do.

**2.—Same—Building House—Liability for Loss.**

Where a party contracts to furnish labor and material and construct an entire work, such as a house, he is not excused from the performance of the contract by the destruction of the work from unavoidable accidents, such as a storm, and not only can he recover nothing for the work already done, but he is liable to the employer for money advanced upon the contract and for damages for its nonperformance.

**3.—Same—Destruction of Property—Measure of Damages.**

Where the sole limitation on the absolute character of the building contract was that if its completion was delayed by damage caused by fire, lightning, earthquake, cyclone, etc., the time fixed for completion should be extended, and an unprecedented storm destroyed the building before completion, the loss fell on the contractors, who were entitled to claim nothing except the difference, if any, between what it would cost the owner to complete the work and the entire contract price.

**4.—Same—Payment as Work Progresses—Acceptance.**

Stipulations for payment as the work progresses do not amount to an acceptance of the work and payment pro tanto, but merely provide a method and time of payment, and such payments are only advances on account of the entire sum.

Appeal from Galveston. Tried below before Hon. W. H. Stewart.

*J. Z. H. Scott*, for appellants.

*G. E. Mann*, for appellee League.

GILL, Associate Justice.—In the month of June, 1900, S. A. Bisbey applied to J. C. League to purchase lot No. 12, in the northwest block of outlot No. 61 according to the Galveston City Company's map of the city of Galveston.

Bisbey stated to League that he wanted to purchase it for the purpose of building a house on it and making it his home, but that he had then only $300 to pay on same, but if League would loan him the money to build on the lot he, Bisbey, could get Bartlett & Lucas, contractors, to put up a suitable house for $1550. League and Bisbey thereupon verbally agreed upon the matter, and in pursuance of such agreement Bisbey, on the 21st of June, 1900, entered into a written contract with Bartlett & Lucas whereby Bartlett & Lucas obligated themselves to erect for Bisbey on the lot in question a house of certain description and dimensions, the consideration being the sum of $1550, to be paid by Bisbey as follows: $515 when the foundation is completed, frame up, rafters on and sheathed; $515 when inclosed, and $520 when completed.

Thereafter, on the 23d of June, 1900, League and Bisbey entered into a written contract by which League agreed to sell to Bisbey the lot above described for the coisideration of $850, and to advance and loan to Bisbey the money in installments which Bisbey had obligated himself to pay to Bartlett & Lucas for the construction of the house, the understanding being that Bartlett & Lucas should execute and deliver to League their bond to indemnify League against any failure on the part of Bisbey to have the house completed according to contract by the 1st of October, 1900.

The written contract between League and Bisbey for the sale of the lot stipulated that after Bisbey had completed the house, League was to convey to Bisbey the lot, together with the improvements to be erected thereon, upon Bisbey paying to League the sum of $2400, less the $300 paid in advance by Bisbey, the deferred payments to be made in monthly installments of $25 each and interest.

Bartlett & Lucas, the contractors, performed the work for which they were to be paid the first installment, and the architect representing both Bisbey and Bartlett & Lucas approved the $515 first installment, and same was paid to them by League at the request of Bisbey. By morning of September 8, 1900, the contractors had performed the work for which they were to receive the second payment of $515, and the architect so certified, but before same was presented for payment the storm which occurred on the last named date totally destroyed and swept entirely away the unfinished house. Bisbey and League each refused to pay the $515 due on that date, and Bartlett & Lucas brought this suit against them, setting up the facts, prayed for judgment against both Bisbey and League for the amount of the installment, and for the establishment and

foreclosure of a builder's and furnisher's lien upon the lot as against both Bisbey and League. Certain parties who had furnished material and work which went into the construction of the destroyed structure, and whose claims had not been paid, were also made parties defendant, and answering they pleaded their claims and prayed for judgment against Bartlett & Lucas and for the establishment and foreclosure of laborers' and materialmen's liens on the lot both as against Bisbey and League. It is not necessary for the purposes of this opinion that we should name the various defendants above referred to, or to indicate the amounts of their respective claims.

Bisbey, pleading over against his codefendant League, prayed judgment for the $300 which was paid by him on his contract of purchase of the lot.

League defended on the ground that he had done no more than loan Bisbey the money for the construction of the house, and reserved the right to pay it over as the work progressed only as a means of more fully securing him against loss, and that none of the parties were entitled to liens on the lot, because the title remained in him, and a lien could not be fixed on his lot for work done for Bisbey without his (League's) consent, which had not been given. He also resisted Bisbey's claim for the recovery of the $300 cash paid on the purchase of the lot.

A trial was had before the court without a jury and resulted in a judgment in favor of Bartlett & Lucas against Bisbey for the amount sued for, and in favor of the materialmen and laborers against Bartlett & Lucas for the respective amounts claimed by them. The liens asserted against the lot were denied, and judgment generally was rendered in favor of League. From this judgment Bartlett & Lucas and their subcontractors, materialmen, and laborers have appealed. Bisbey has not appealed. There is no statement of facts in the record, and the facts above found are taken from the findings of fact prepared and filed by the trial court.

Appellants, Bartlett & Lucas, sought to hold League personally on the building contract on the ground that League was in effect a party thereto, was the real beneficiary therein, the improvements being placed by his consent and authority upon land belonging to him. It is also contended that this more certainly appears from the fact that he required the builders to execute to him an indemnity bond conditioned for the faithful performance of their contract with Bisbey within the time prescribed therein, and that in the body of the bond it is stipulated that League shall pay the three installments as they become due under the builder's contract. Neither the contract of Bartlett & Lucas with Bisbey nor the bond executed by them to League nor the contract between League and Bisbey for the purchase of the land is set out in the findings of the court, but only the substance of those instruments is disclosed. Copies of each of the three instruments are appended as exhibits to the petition of Bartlett & Lucas. While it appears from the petition itself that they undertook for the sum named to furnish all labor and materials except

for plumbing and gas fittings and to complete the house according to plans and specifications, it appears both from the petition and the findings of the court that the house was never in fact finished, and that nothing was done toward the construction thereof after the storm.

Plaintiffs sought to avoid the force of the fact that the contract had not been fully performed by them, by allegation and proof that the uncompleted work had been destroyed by an unprecedented storm and its completion rendered impossible. Appellee urges here that the excuse is not sufficient under the facts, and insists for that reason and under the undisputed facts that the judgment as to League should be affirmed.

It seems to be well settled that where a party by his own contract creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding inevitable accidents, because he might, if he chose, have provided against it in his contract. So, one contracting to furnish labor and material and construct an entire work is not excused from the performance of the contract by the destruction of the work, whether from his own negligence or unavoidable accident, and not only can he recover nothing for the work already done, but is liable to the employer for money advanced upon the contract and for damages for its nonperformance. 29 Enc. of Law, old ed., p. 906; Devlin v. Weis, 67 Texas, 510; School Trustees v. Burnett, 27 N. J. L., 513; Dermott v. Jones, 2 Wall., 1; Stees v. Leonard, 20 Minn., 494; Lawson on Con., pp. 460, 461; Bish. on Con., sec. 590; Logging Co. v. Robson, 69 Fed. Rep., 773; Adams v. Nichols, 31 Am. Dec., 137.

In cases, however, where one undertakes without qualification to do an entire job, but the work to be done is in the nature of repairs on or addition to a thing already in existence, and the thing to be repaired or added to is destroyed before the completion of the work, the rule above stated is not applied. Not on the ground that even in such a case he may not bind himself absolutely, but on the ground that from the nature of the contract and the work to be done it may fairly be inferred that the contracting parties contemplated the continued existence of the thing to be repaired. 29 Enc. of Law, old ed., p. 908; Devlin v. Weis, supra; Lawson on Con., supra; Angers v. Scully, 57 N. E. Rep., 674.

Bearing in mind these rules of law, let us determine in the case before us whether the contractors bound themselves without reservation to furnish all labor and material and complete and turn over to the owner the building they undertook to construct. It is clear that the contract does not come within the category of contracts to repair, and therefore the effects of the storm did not render the performance of the contract impossible.

The contract declared on in this case (a copy of which is appended to the petition as an exhibit) contains this sole limitation on its otherwise absolute nature both as to time and substance: "That if the completion of the work is delayed by the acts of the owner or by damage which may happen by fire, lightning, earthquake, cyclone, or by the

abandonment of the work by the employes of the contractors through no fault of theirs, then the time fixed for the completion of the work shall be extended for a period equivalent to the time thus lost," etc. It thus appears that the contractors stipulated what they might claim for themselves in the very event which happened. So, if it be conceded that League would be liable if any liability at all was shown, we think it follows inevitably that the loss occasioned by the storm must be borne by the contractors. In this view we are fully sustained by the authorities cited, and indeed by the great weight of authority to which we have had access. It may be contended, however, that the rule of liability here adopted is inapplicable because of the stipulation that certain payments should be made as the work progressed. This view has not escaped our attention, but we are unable to see in what respect this provision affects the entirety of the undertaking. If the contractors had abandoned the work when the second installment became due, the owner would have had the right to procure the completion of the work. If, because the contract price was too low, or if for any other reason it cost as much as the full contract price to complete it, the owner could recover back from the contractors the sums already paid them. Or if nothing had been paid the contractor for the work already done, and the owner is compelled to complete the work, the contractor can not recover the value of the part of the work done by him. The measure of his compensation would be the difference between what it cost the owner to complete the work and the entire contract price. On this theory it has been decided that stipulations for payment as the work progresses do not amount to an acceptance of the work and payment pro tanto, but amount to no more than providing a method and time of payment, its most ordinary purpose being to enable the contractor to pay for his labor and material and thus speed the work. The payments are mere advances on account of the entire sum. Butterfield v. Byom, 27 N. E. Rep., 667; School Trustees v. Burnett, 27 N. J. L., 272.

We are of opinion, therefore, that, conceding that League would have been personally liable had the contract been discharged, and that the contractors would have been entitled to a lien on the lot, yet because the contract was not fulfilled, and nothing has been shown legally sufficient to excuse its nonperformance, no liability on the part of League has been shown. The claims of the subcontractors, materialmen and laborers under plaintiffs, having no higher basis than the rights of plaintiffs themselves, must likewise fail.

For the reasons given we think the judgment of the trial court should be affirmed and it is so ordered.

*Affirmed.*

Writ of error refused.