Case 56.—ACTION BY JOHN McHENRY AND ANOTHER AGAINST ED. C. TERRELL, TO ENFORCE A MECHANIC'S LIEN.—November 15.

## Terrell v. McHenry, &c.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Re-versed.

1. Mechanics' Liens—Contract—Terms—Evidence—Evidence in a suit to enforce a mechanic's lien for a roof held to show that it was put on under a contract that it should not be paid for if it leaked.

2. Same—Right of Subcontractors—Under Ky. Stats. 1903, sec. 2463, providing that mechanics' liens shall not be for more in the aggregate than the contract price of the original con-tractor, the subcontractor, as well as the contractor, is not

Terrell v. McHenry, &c.

entitled to a lien for any amount; the contract being to put on a roof to be paid for only in case it did not leak within 30 days, or was thereafter stopped from leaking, and it not having been made so it would leak.

IRA JULIAN for appellant.

On the facts proven we think it clear that the judgment is erroneous, and should be reversed. Appellee is not entitled to full pay for this roofing, or for putting it on, or for freight, because the condition upon which it was to be paid for has never been complied with; or, in other words, the condition precedent to payment has not been performed. Or if the court would put it the other way, the warranty made and the condition of the warranty is such (30 days' trial) that nothing can be demanded, and he has been damaged probably more than the value of the roof would have been if sound.

QUIGLEY & MOCQUOT for appellees.

1. The subcontractor, Miller, is entitled to his claim, whatever may have been the contract between Terrell and McHenry.

2. The damage to feed and stock could not properly be plead as a counterclaim in the action.

3. Measure of damages for breach of warranty is the difference in value between the goods furnished and that contracted to be furnished.

4. Acceptance of personal property after inspection, or a reasonable opportunity to inspect, makes the purchaser liable for the contract price.

### AUTHORITIES CITED.

Bailey, &c. v. Hightower, 22 Ky. Law Rep., 88; sec. 96, Code of Prac.; Nolle v. Thompson, 3 Metcalf, 121; Jones, &c. v. Mc-Ewen, 91 Ky., 373.

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

Ed C. Terrell was putting up a livery stable in Paducah. John McHenry was agent for a paper roofing manufactured by a concern in Chicago, known as "Climax Roofing," composed of felt, asphalt, and sand. By an arrangement between Terrell and McHenry the stable was covered with this roofing. Terrell declined to pay for the roof, and thereupon

McHenry, who had made the contract with Terrell,
and C. J. Miller, who had put the roof on under a con-
tract made by him with McHenry, filed mechanics'
liens against the property and brought this suit to
enforce them. Terrell defended the suit on the
ground that he had entered into a contract with Mc-
Henry, whereby McHenry agreed to furnish to him
and have placed on his stable the roof in question at
a certain price and leave the same for 30 days, and
if the roof did not leak in that time Terrell was then
to pay him therefor, but if it did leak during that time
he was not to pay him for it, nor until it was stopped
from leaking. He alleged that the roofing was of
inferior and defective quality, and was placed on the
roof in an unworkmanlike manner; that it leaked
within 30 days; that McHenry and Miller were at
once notified of its condition, and undertook to stop
the leaks, but failed to do so, and the roof has con-
tinued to leak since. He pleaded a counterclaim for
the damage to his property by reason of the leaky
roof. His version of the contract was denied by Mc-
Henry and Miller, and, the case being heard, after
proof was taken, the court gave judgment in favor of
the plaintiffs, and the defendant appeals.

The proof shows that Terrell knew nothing about
the roof which was recommended by McHenry. Mc-
Henry, being asked if he guaranteed the roof to Ter-
rell, said that he told Terrell that if the roof was put
on properly it could not leak. He says he simply
sold the material to Terrell. On the other hand, Ter-
rell swears positively that the contract between him
and McHenry was as set out in his answer, and in
this statement he was confirmed by his brother, who
took part in the making of the contract. The testi-
mony of the Terrells is sustained by a number of cir-

cumstances in the record. McHenry began the nego-
tiations with Terrell on a steamboat. He there told
Terrell that he understood that he was putting up a
large building, and that he had the agency for roof-
ing manufactured in Chicago, and would like to show
him some samples of it. After this he saw Terrell
again and the contract was made. McHenry made
the contract with Miller to put on the roofing, and
on one Saturday, while Miller was putting it on, he
went to Terrell to get money to pay his hands. Ter-
rell told him that he was not to pay for the roof if it
leaked in 30 days, and refused to pay him. When the
roof leaked Terrell notified McHenry, and McHenry
and Miller made a number of efforts to stop the leaks,
which were unsuccessful. Finally, when Terrell kept
complaining of the roof, McHenry said to him, "I
told you that you did not have to pay for that roof
until it quit leaking." The material was all shipped
from Chicago to McHenry. McHenry paid the
freight on it. McHenry made the contract with Mil-
ler, and Terrell had no communication with him. Mc-
Henry was anxious to have his roof tried, and Ter-
rell did not know anything about it. These circum-
stances give weight to the testimony of the Terrells
to the effect that McHenry guaranteed the roof and
agreed that Terrell was not to pay for it if it leaked
within 30 days. That the roof leaked, and leaked
badly, is clearly shown by the evidence. When the
paper was put on there were, as Miller, says, a hun-
dred holes in it. These holes were patched, but the
patching according to other witnesses, did not stand.
At any rate, water came through the roof to such an
extent under the evidence as to render it valueless as
a roof. As between Terrell and McHenry, there can,

under the evidence, be no recovery in favor of McHenry against Terrell.

It is insisted that Miller, who did the work, is entitled to a lien as a subcontractor, although McHenry, under whom he worked, is not entitled to recover. We can not concur in this construction of the statute. Miller was employed by McHenry, and, while McHenry says that he employed Miller at the request of Terrell the evidence does not sustain him in this, Miller, having been employed by McHenry, must look to McHenry for his pay. If McHenry was entitled to any lien on the house, Miller would be entitled to the benefit of that lien; but if McHenry has no claim which he can enforce, and never had any, there is nothing for Miller's right to attach to. If McHenry had had a claim he could enforce against Terrell, and Terrell had paid McHenry, leaving Miller unpaid, a different question would be presented. But where a contractor fails to carry out his contract, and the owner of the property does not get what he contracted for, and in fact gets nothing of any value, so that he is in no way liable to the contractor, and never was liable, the subcontractor must look to the person with whom he contracted for his pay. McHenry was to get nothing for the roof if it leaked within 30 days, nor until it was made to stop leaking. Miller, who was a subcontractor under McHenry, is in no better attitude, so far as Terrell is concerned, than McHenry, with whom he contracted. If Miller has a lien for his work, then the company in Chicago which furnished the material might also have a lien, and thus Terrell would be in effect required to pay for the roof, although it was guaranteed to him and was valueless. (Parrish v. Christopher, 3 S. W., 603, 8 Ky. Law Rep., 868.)

The statute provides (Ky. Stats., 1903, sec. 2463):
"The liens provided for herein shall in no case be for
a greater amount in the aggregate than the contract
price of the original contractor, and should the ag-
gregate amount of liens exceed the price agreed upon
between the original contractor and the owner then
there shall be a pro rata distribution of the contract
price among said lien holders." The original con-
tract price in the case before us was to be nothing if
the roof leaked, and therefore there is nothing to
prorate among the lienholders.    (20 Am. & Eng.
Ency. of Law, 362, 444.)

Judgment reversed,   and  cause  remanded, with
directions to the circuit court to dismiss the petition.