CASE 38.—ACTION BY THE CHOTEAU TRUST & BANKING COMPANY AGAINST C. T. SMITH AND OTHERS. —April 21, 1909.

# Choteau Trust & Banking Co. v. Smith, &c.

Appeal from Scott Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for defendants, plaintiff appeals—Reversed.

1.  Bills and Notes—Checks—"Holder in Due Course."—Where a bank in the usual course of business took a check in good faith and without notice of any infirmity in it, paying the holder part of the proceeds and depositing the remainder to his credit, the bank was a "holder in due course" under St. 1909. Sec. 3720b, subsecs. 51, 52, defining such a holder.

2.  Bills and Notes—Holder in Due Course—Actions.—Under St. 1909, section 3720b, subsection 57, providing that a holder in due course holds the instrument free from any defect of title of prior parties and from defenses available to prior parties among themselves, and may enforce payment for the full amount thereof against all persons liable thereon, a bank which was the holder in due course of a check received from an indorser could, upon the dishonor, elect to sue the maker and indorsers or any one of them for the full amount of the check.

3.  Bills and Notes—Check—Bona Fide Holder—Right of Action Against Maker.—Though a bank was a bona fide holder of a check for value when it acquired it, it could not recover thereon against the maker if the maker should plead and show that the bank had parted with its interest and was simply suing for the benefit of an indorser who had paid back to the bank the money it had paid him.

JAS. B. FINNELL and JAS. F. ASKEW for appellant.

BRADLEY & BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On October 31, 1906, C. T. Smith gave to H. B. Kinsolving a check for $380 on the Deposit Bank of Sadieville, Ky. Kinsolving indorsed the check to J. B. Dunn, and Dunn indorsed it to the Choteau Trust & Banking Company. The check when presented for payment was protested by the direction of Smith, and the Choteau Trust & Banking Company brought this suit against Smith to recover on the check in the Scott Circuit Court. W. A. Hinton on his petition was made a party defendant to the action. He and Smith in defense of the suit charged that the check had been obtained by fraud, and denied that the bank was a bona fide holder for value. By an amended answer they pleaded that the bank was fraudulently conniving with Kinsolving and Dunn to assist them in collecting the check and to use the name of the bank as plaintiff for the fraudulent purpose of preventing them from relying upon their defenses to the paper as against the original payee. The case was heard before a jury, who returned a verdict in favor of the defendants. Judgment was entered on the verdict, and the plaintiff appeals.

Choteau is a small town in Indian Territory. In October, 1906, the Howey Realty & Financing Company had a sale and drawing of lots there and ran an excursion from Lexington, Ky., out to the drawing; the realty company paying the expenses of any person who bought 10 lots at $45 each. Kinsolving was an agent of the company. Smith and Hinton were on the train. On the way out Kinsolving persuaded Hinton to buy 10 lots. His traveling expenses were deducted from the amount the lots cost, and Hinton then got Smith to give Kinsolving his

check for $380, as Hinton was in some doubt that he had this much to his credit in bank. When they got to Choteau, and Hinton saw the lots, he became dissatisfied and demanded the return of his check. In the meantime, however, Kinsolving had indorsed the check to Dunn, and Dunn had indorsed it to the plaintiff. When Kinsolving refused to return the check, Smith telegraphed the bank at Sadieville not to pay it, and for this reason the check was not paid when it finally reached there. The evidence is very conflicting as to what took place between Kinsolving and Hinton on the train; but there was sufficient evidence to submit to the jury the question whether the check was obtained by fraud, under the rule in this State that where there is any evidence the question is for the jury; but the evidence is conclusive that the bank took the check in good faith and without notice of any infirmity in it, and that at the time it paid Dunn $125, he depositing the remainder with it. He checked this out a day or so afterwards and before the check was protested. The bank had no interest in the sale of the lots or in the realty company, and the transaction with Dunn was in the usual course of business. It does not appear from the record where Dunn lived, although it may perhaps be inferred from some of the proof that he lived in St. Louis. It is said that he was solvent, and there is no evidence to the contrary. The defendants showed by a number of Kentucky bankers that by the usual course of banking, when a check which had been received was dishonored, the bank would look to the person who had indorsed the check to it, if he was solvent, rather than to the maker of the check, and upon this evidence the court gave the jury the following instruction: "The jury are in-

structed to find for the plaintiff, the Choteau Trust & Banking Company, unless they believe from the evidence that the plaintiff conspired with H. B. Kinsolving and J. B. Dunn, the payee and indorser of said check, respectively, to defraud the defendant Hinton by depriving him of any right or rights he had to resist and refuse payment of said check, because of misrepresentations made, if any were made, to Hinton by the agent or agents of the Howey Realty Company concerning the lots alleged to have been purchased by said Hinton from said company, then they ought to find for defendant."

It is evident from the proof that the bank was a holder of the check for value; but it is insisted that its not looking to Dunn for the money, and insisting on collecting it from Smith, is evidence that it is no longer a holder of the paper for value, and that the suit is brought under an arrangement with Dunn to defraud Smith and Hinton, by depriving them of their right to show the check was obtained by fraud. Section 3720b, subsections 51, 52, 56, 57, Ky. St. (Russell's St. Secs. 1920, 1921, 1925, 1926), provides as follows:

"The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument." Subsection 51.

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face. (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in

the title of the person negotiating it.'' Subsection 52.

''To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.'' Subsection 56.

''A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.'' · Subsection 57.

As the plaintiff is a holder in due course, it has a legal right under the statute to enforce payment of the instrument for the full amount of it against all parties liable thereon. When the plaintiff has the right to sue all or any of the makers of an instrument at his election, the person who is sued cannot complain that others equally liable are not sued. If six persons sign a promissory note, and the payee sues one of them, he cannot complain that suit was not brought against the other five. The exercise of a legal right cannot be made the basis of a defense to an action. If Dunn is good, and Smith has to pay this check to the bank, he can then sue Dunn for the money which he has paid; but he cannot demand of the bank that it shall forego its action against him, and bring an action against Dunn before it requires him to pay the debt. The purpose of the statute is to give the holder of the paper an election as to whom he will sue. A large part of the business of the country is done on checks. Checks are taken as money, and pass from hand to hand as such, because

it is understood that an innocent holder can enforce
payment against the maker without regard to any
defense he may have against the payee; but if the rule
were laid down that the banks who cash checks must
in the first place look to the indorser, or that their
failure to look to the indorser is evidence of a fraud-
ulent conspiracy, the whole value of checks for com-
mercial purposes would be destroyed, and the mani-
fest intention of the statute would be defeated.   We
had a similar question before us in Sabel v. Planters'
Bank, 110 Ky. 299, 61 S. W. 367; 22 R. 1755. The bank
there had cashed a draft to which a bill of lading was
attached as security. The drawee refused to accept
the draft and then undertook to attach the goods
covered by the bill of lading, insisting that the bank
was not a holder for value and was only prosecuting
the suit to cut off his defense against the drawer.   It
was held that the attachment could not prevail.   To
hold that the failure of the bank to follow the custom
of looking to the indorser is evidence of a fraudulent
conspiracy with him to defeat the equities of the
maker would be to require the bank to follow the
custom in order to be safe in its suit, and the result
in the end would be practically to deny to it the right
to look to any or all of the parties at its election.
The statute is only declaratory of the common law and
the rule heretofore in force in this State: "A bona
fide holder for value of negotiable paper is one who
has acquired title in the usual course of business,
for a valuable consideration, in good faith, from one
capable of transferring it or from one in possession
of the paper with an apparent right to transfer it
and without notice or knowledge of defenses or cir-
cumstances which should put him on inquiry." 7
Cyc. 924. "Defenses available against the real

party in interest may be set up, although the action be brought by a nominal party." 8 Cyc. 25. "The real party in interest is the person beneficially entitled to the proceeds of the bill or note. As a rule the holder is presumptively the owner, and as such is the real party in interest and entitled to bring suit." 8 Cyc. 69. "At common law the holder of a bill might bring several simultaneous actions against all or any of the prior parties liable to him. He could not, however, maintain a joint action against parties severally liable. By statute in many of the United States, in England, and in Canada the holder of a bill of exchange or promissory note may bring suit against the drawer or maker, acceptor or indorser, any or all, in the same action." 8 Cyc. 92.

If the purchaser of the paper is a bona fide holder for value when he acquires it, he may enforce the payment of the paper, unless the defendant pleads and shows that he is not the real party in interest. If the defendant here had pleaded and shown that the bank had no actual interest in the collection of the note, or that it was simply bringing the action in its own name for the benefit of Dunn, who had already paid back to it the money it had paid him, the principle relied on by counsel would apply; but there was an entire failure to establish anything of this sort, and, on the conclusion of the evidence, the court should have instructed the jury peremptorily to find for the plaintiff.

Judgment reversed, and cause remanded for further proceedings consistent herewith.