## Doll, et al. v. Young, et al.

(Decided September 18, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Liens—Mechanics or Materialmen's Liens.—The security afforded to mechanics and materialmen by the statutes of the several States of the Union has no recognition in the common law, but rests and must find support in the statute creating the lien security.

2. Subcontractor—When Must Look to Contractor for His Pay.— Where the contractor failed to carry out his contract, and the owner of the property did not get what he contracted for, but in fact got nothing of value so that he was never liable, the subcontractor must look for his pay, not to the land owner, but to the contractor with whom the contract was made.

3. Liens—When Contractor Not Entitled to Recover for Founda-
tion.—Although the foundation remained after the house was
blown down, Lutz, one of the contractors, should not be allowed
credit for the value of the foundation in the cross action of the
landowner against him in which was sought judgment for
amounts paid to and for Lutz during the progress of the build-
ing. Having undertaken to put up a completed building, and
having only so performed that only the foundation is there, he
cannot recover upon a quantum meruit; and to allow credit for
the foundation would be an allowance of this nature.

BOYCE WATKINS, STUART CHEVALIER for appellants.

L. A. HICKMAN for appellees.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

In the summer of 1909, George Lutz, one of the ap-
pellants, agreed to build for George Young, an appellee
here, a house on Young's lot on the Bardstown road in
Jefferson County, at the price of $2,350. When the house
had been nearly completed, it was blown down. Photo-
graphs in the record evidence its wrecked state and that
it entirely lost its identity and character as a building.
Lutz did not undertake to rebuild or complete his con-
tract, and the record admits his delinquency. The lum-
ber for the house was furnished by the appellants Doll
& Zoeller, the painting was done by appellants Peter,
Meyer & Son, the hardware was furnished by appellant
Albrecht & Heick Hardware Company, the foundation
was constructed by appellant John Fegenbush, and cer-
tain · brick were furnished by appellant Southern
Brick & Tile Company. All of these filed in the Jeffer-
son County Clerk's office their statutory mechanics' or
materialmen's lien statement upon the property, and
either by direct action or by cross-petition sought to
assert and enforce their liens in this action. Doll &
Zoeller, in addition, sought to recover a personal judg-
ment against Young for the lumber bill of $680.17. By
cross-petition, Young sought to recover from Lutz, the
contractor, certain amounts advanced to him as the work
progressed. The case was prepared before the Master
Commissioner. In conformity with his report, a decree
was entered dismissing the claims of Doll & Zoeller, the
Albrecht & Heick Hardware Company, Peter Meyer &
Son, the Southern Brick & Tile Company, save for a
small personal judgment for material bought by Young

in person, and John Fegenbush, save for a like small judgment based upon the like fact. The personal judgment sought by Doll & Zoeller against Young, was refused. Young, upon his cross action against Lutz, was awarded judgment for $534, the amount paid by him to and for Lutz during the progress of the building and before its destruction. The various mechanics, material-men, and Lutz appeal. The questions presented are:

1. The facts having so eventuated because of the contractor's default as that the ground-owner owes the contractor nothing, have these mechanics and material-men liens for work done and material supplied by them? Is their right to a lien direct, or is it through the route and right of the contractor? Can they have a lien when the contractor under whom they performed has none because of his own non-performance?

2. Do the facts in the record sustain Doll & Zoeller's claim that Young bought the lumber from or agreed to pay them for it, with a consequent right in them to a personal judgment against him?

3. The foundation, the basis of John Fegenbush's claim, is yet there. Is he entitled to his lien, notwithstanding our answer to question No. 1 is negative?

In the first place, it is to be remarked that counsel for appellants concede that upon the authority of Louisville F. & M. Co. v. Patterson, Jr., 29 K. L. R., 349, Lutz is not entitled to his pay for the building, whether its wreck was occasioned by his own delinquency or the act of God.

The security afforded to mechanics and material-men by the statutes of the several States of the Union has no recognition in the common law, but rests and must find support in the statute creating the lien security. The language of each particular statute, therefore, must govern its interpretation without much of aid from the judicial declarations of other jurisdictions. The opinion of the learned chancellor below dismissed the lien claims upon the authority of Terrell v. McHenry, 121 Ky., 452. The opinion in that case turns upon the mechanics' lien statute, as amended by the law of 1896, the law in force at the time of the happening of the facts in the record here. The court remarked that where the contractor failed to carry out his contract, and the owner of the property did not get what he contracted for but in fact got nothing of value, so that he

was never liable, the subcontractor must look for his pay, not to the land-owner, but to the contractor with whom the contract was made. The opinion then proceeded to quote from statutes, section 2463, as follows: "The liens provided for herein shall in no case be for a greater amount in the aggregate than the contract price of the original contractor; and should the aggregate amount of liens exceed the price agreed upon between the original contractor and the owner, then there shall be a pro rata distribution of the original contract price among said lien-holders." It was then remarked that the contract price was nothing, as the contractor had wholly failed to carry out his contract, and that, therefore, there was nothing to be prorated among the lien-holders. "Contract price" was construed as meaning, not the abstract amount agreed to be paid, but the sum which the contractor was actually entitled to receive for the whole work done by him. If that opinion stands as the law in Kentucky, the admitted fact that Lutz was never entitled to anything is conclusive against the lien claims of the subcontractors under him.

It is first argued that that opinion was written as upon the statute as it stood before the amendment of 1896, and in the spirit of the old statute which expressly provided that the subcontractors should have no lien if the contractor had none. The opinion expressly quotes and bases itself upon the amended or new statute; and, therefore, it is idle to say that it is based upon the old.

Then it is argued that the court has departed from, or written counter to, the opinion in several later cases, which it becomes necessary, therefore, to notice:

Hightower v. Bailey, 108 Ky., 198. In this case, where the principal question was the constitutionality of the new statute, it was remarked that under the old law the owner was entirely safe, without notice of the claims of others, to pay his contractor when he pleased, while under the new statute the subcontractors would have their liens, even though the owner should have no notice of them and might "owe the contractor nothing." Plainly, the court meant by the quoted phrase, a non-indebtedness resulting from some discharge of an indebtedness once having a valid existence; it did not at all mean an indebtedness always existent, a state of fact where there never had been, and never would be, any-

thing due the contractor, because he had delivered no quid pro quo to the owner.

Browinski v. Pickett, 133 Ky., 420. Here the owner was to pay 80 per cent of the contract price to the contractor as the work progressed. When the house was some five-sixths complete and paid for, the contractor abandoned, and the owner completed it. The owner got his house; he received a consideration much larger than the subcontractor's claim. The court held that the subcontractor was entitled to his lien. It was simply a case of the owner's paying the original contractor at his peril.

Thacker v. Bullock Lumber Co., 140 Ky., 463. In this case the facts were in brief that the owner, who had paid the contractor in full for the house, was adjudged to have to pay again to the extent of the lien of a subcontractor. The owner received the house for which he contracted; he paid for it at his peril and did not see that the money which he paid went to discharge the subcontractor's debt. It has no bearing upon the question here.

The cases of Schnute Holtman Co. v. Sweeney, 136 Ky., 773, and Canady, Gillum & Key v. Webb, 80 S. W., 172, are not in point further than that they establish that the subcontractor is entitled to his lien without respect to whether the owner may have paid the contractor. In these cases, as well, the owner received that for which he paid.

Watts v. Metcalfe, 23 K. L. R., 2189. This case was decided upon a state of fact accruing before the adoption of the amendment of 1896. In substance, it was held that where the owner had paid the original contractor in part and had used the balance of the sum due him to complete the work, the subcontractor could have no lien. The court remarked that the subcontractor's rights were dependent upon and could not be greater than the original contractor's; which remark is seized upon by the appellants here to indicate that under the new law the subcontractor's rights could be greater than the contractor's. It is a patent non sequitur.

Henry Vogt Machinery Co. v. Lingenfelser, 99 S. W., 358. In this case, the property into which the material had been put by the one seeking the lien was destroyed by fire; and the court, in discussing the materialman's rights, observed that the lien could be enforced against

the land and whatever was saved as wreckage. This statement of fact and the court's statement are strongly relied upon by appellants here; but they failed to remark the significant and distinguishing fact that the building was destroyed after it had been received by the owner, after he had effected his insurance on it, and after the risk of its destruction became his and was no longer that of the original contractor. In other words, the owner had received that for which he contracted.

We consider it unnecessary to discuss the other Kentucky authorities. Nor are we concerned by the very excellent discussion in briefs for appellants of the rules and judicial declarations from other jurisdictions; for the reason that, as we have above pointed out, each statute must speak for itself and must afford or deny relief by its own spirit and own terms. The rule of Terrell v. McHenry, upon full consideration, seems satisfactory and entirely sound to us. An analysis of the question under discussion brings us to consider whether in dealing with the original contractor, the owner or the subcontractor must be held to suffer from his delinquency. In other words, the question is as to who assumes the risk of his performing his contract. If the owner does, of course, it is fair that the subcontractor, in morals at least, would be entitled to rely upon the owner's selection and judgment. If, on the other hand, the risk is that of the subcontractor, it is morally right that he should suffer if he misjudges the character and business capacity of the contractor under whom he engages. In the great majority of cases, the owner and subcontractors never see each other, nor is the owner even acquainted with the identity of the subcontractors. The subcontractors come in contact with the contractor and know that he exercises the shaping hand which must result in a performance or a non-performance of the contract. It is, therefore, reasonable to assume that when they engage to supply material or to labor under him, they look to his good faith, his character and his mechanical proficiency in the performance of the contract. They, therefore, take the risk as to him in these respects. The statute, however, does not leave the subcontractors to rely upon the contractor's financial responsibility alone; but when that contractor has kept the faith and has delivered that which he undertook to deliver to the owner, the subcontractor has, by the express terms of the statute, his

lien upon the completed edifice and upon the ground on which it stands. To hold otherwise would put this ground-owner in the position where, his building being destroyed, he could not proceed to erect another building, because these subcontractors' liens would all obtain, with the result that the owner in building would build but for their benefit, and with the result that he could not get other mechanics and materialmen to perform because their liens would of necessity be secondary. We adhere to the doctrine of Terrell v. McHenry, and, therefore, approve the judgment of the chancellor based upon it.

The chancellor's determination of the second question was purely a determination of fact. There is doubt in the record from the testimony; but upon a careful consideration of it we are inclined to believe the chancellor's ascertainment of the fact was correct. The testimony for appellants Doll & Zoeller, is significant in one respect as leading to this conclusion. It is testified that Young, the owner, in his conversation with the lumbermen, said to them that he had desired a bond of Lutz, the original contractor, for the faithful performance of his contract, but that finding Lutz unwilling to give the bond, the arrangement was made that Young might pay the money direct to the lumbermen. It was not his obligation to pay the money direct to them, nor in any sense his undertaking to do so. On the other hand, it was a privilege accorded to him and to Lutz whereby Lutz was relieved of the necessity of giving the bond, and the owner of the possibility of having to pay the money twice. The arrangement was an entirely proper and sensible one, but it did not extend so far as to become an obligation.

The third and last question in the record rests upon the claim of the appellant Fegenbush, that as the foundation which he furnished is yet there, he should be entitled to his lien upon it. If anyone were entitled to a lien, it would not be Fegenbush alone; but the right would extend as well to every mechanic who had done work and every materialman who had put material into the entire building; for the statute does not give each mechanic or each materialman a lien upon that precise part of the building which he has furnished, but gives to each of them a co-ordinate and co-equal lien upon the property improved. The man who built the foundation,

therefore, would have no greater right to a lien upon it than would the carpenters.   But this is not the real question.   It is admitted that the owner owes the original contractor nothing.   We have committeed ourselves to the position that when the original contractor is entitled to nothing because he has not delivered that which he was to deliver, the subcontractors are entitled to nothing.   It is true that the ground-owner may at some future time make use of this foundation, and thereby benefit himself at the expense of Fegenbush; but this was a risk that Fegenbush took when he contracted under Lutz and risked him to do as he agreed to do.

For George Lutz, it is claimed that the judgment for $534 against him should be credited by the $250 payment on the foundation, because the foundation is yet there.   Lutz's opportunity was first to build the building as it should have been built; and then failing this when the building blew down, to begin again and use this foundation; and using this foundation, to carry out his contract.   Thereby he would have obtained the benefit of the foundation.   Having undertaken to put up a completed building, and having so perfomed that only the foundation is there, he cannot recover upon a quantum meruit; and to allow him credit for the foundation would in substance be an allowance of this nature.

The answer given to the first proposition enunciated makes it unnecessary for us to discuss the remaining questions presented by briefs.

The judgment of the trial court is affirmed.