## Monyahan v. City of Lancaster.

(Decided February 24, 1916.)

### Appeal from Garrard Circuit Court.

1. Mechanics' Liens—Liability of Property Owner—Rights of Subcontractors.—Where the original contractor completes the work in accordance with the contract, the property owner will be responsible to mechanics, materialmen and subcontractors who have observed the requirements of sections 2463-2468 of the Statutes for the amount of their claims that do not aggregate more than the contract price, although the owner may have paid the original contractor the full contract price.

2. Mechanics' Liens—Liability of Property Owner—Rights of Subcontractors.—Although the improvements may not have been constructed in accordance with the contract and hence the owner does not owe the full contract price, he will yet be liable to subcontractors, materialmen and mechanics who have observed the requirements of the statute to the extent of the reasonable value of the improvement to him, and he cannot set off any claim for damages he may have against the original contractor for failing to perform the work according to contract against the claims of the subcontractors, mechanics or materialmen, although he may have an abatement of their claims to the extent that he was damaged by their failure to perform the contracts they had made with the original contractor.

3. Mechanics' Liens—Liability of Property Owner—Rights of Subcontractors.—If the improvement contracted for is wholly worthless to the property owner on account of the failure of the contractor to fulfill the contract, then a subcontractor, mechanic or materialman can assert no claim against the property owner or lien on the property, although he may not be responsible for the conditions that resulted in the improvement being worthless and of no value to the property owner.

4. Mechanics' Liens—Liability of Property Owner—Rights of Subcontractors.—In every state of case the property owner may have an abatement of the claim asserted by the subcontractor, mechanic or materialman to the extent that the property owner sustains damages by his failure to perform his part of the contract.

H. C. KAUFFMAN, J. J. GREENLEAF and GREENLEAF & HERRINGTON for appellant.

J. E. ROBINSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On October 8, 1912, the city council of Lancaster entered into a contract with the Greer Filter Co. for the construction of a filter plant in connection with its water supply. The contract with the Greer Co. obligated it to construct a plant of one hundred thousand gallons daily capacity and place the same in operation for the sum of $2,250.00 within sixty days from the date of the contract. When the material for the construction of the plant was on the ground, the city was to pay fifty per cent. of the contract price and the remainder when the plant had been completed according to specifications which were a part of the contract.

After securing this contract, the Greer Co. sublet the contract to Monyahan "to build the filter and filter house for $314.00, payable when the work has been completed and accepted by the engineer." Afterwards the contract price was increased to $336.40.

After this contract had been entered into between the Greer Co. and Monyahan, and when the city had notice of the contract, it paid the Greer Co. $1,125.00, one-half of the contract price that it was agreed should be paid when the material was on the ground; but when the filter was completed, the city refused to accept it or to pay Monyahan any part of the price he was to be paid by the Greer Co., no part of which had been paid to him by the Greer Co. Upon the refusal of the city to pay his claim, Monyahan filed his mechanic's lien and later brought this suit against the Greer Co. and the city seeking to recover from the city the $336.40 which the Greer Co. had agreed to pay him.

The Greer Co. did not answer, and judgment went against it by default, but the city filed an answer denying that the filter plant had been completed according to its contract and specifications, and averred that the contract was broken in several respects, to-wit: (1) That the concrete walls used in the construction of the filter plant were not built according to the contract and would not hold water; (2) that the walls were not reinforced with steel rods as stipulated in the contract; (3) that no baffle walls were built; (4) that the lumber used in the construction of the forms was not of that character or quality specified in the contract; (5) that the concrete was placed in the forms without being spaded away from

the sides and without the form planks being wet or oiled; (6) that the plant would not filter one hundred thousand gallons of water per day, or more than sixty or seventy thousand gallons a day; (7) that the number of strainers called for in the contract were not furnished and that it took more than two and one-half per cent. of the water to clean the filter.

It is further set up that it had refused to accept the filter plant because it was entirely worthless for the purpose for which it was intended, and consequently it was compelled to and did erect a new filter plant in place of the one constructed under the Greer contract, and it asked that the petition of Monyahan be dismissed.

Other pleadings were filed completing the issues, and after the case had been prepared for trial, it was heard by the lower court and a judgment entered dismissing the petition, and Monyahan appeals.

There appears to be no controversy between the Greer Co. and the city, as the Greer Co. apparently abandoned its right to collect from the city the balance of the contract price, or at least this record does not show that it ever asserted a claim against the city for this balance. Nor is there any controversy between the Greer Co. and Monyahan, as the Greer Co. permitted a judgment against it in favor of Monyhan to go by default.

It will thus be seen that the city had paid on the contract price only $1,125.00, and this was paid to the Greer Co. before the work was commenced and when the material for its prosecution had been put on the ground; and it now claims that it should not be required to pay any more because of the worthless condition in which the Greer Co. left the filter plant. It is further contended that as the Greer Co. has no enforceable demand against it for the remainder of the contract price, neither has the sub-contractor Monyahan, as there was a total failure of consideration. It is also said that the defective and worthless condition of the filter was due not only to the imperfect manner in which the Greer Co. did its part of the work, but also to the imperfect manner in which Monyahan did his part of it.

On the other hand, counsel for Monyahan argue that the filter plant was not useless or worthless, but, on the contrary, could by a little labor and expense have been put in such condition as to comply with the contract, but the city would not allow this to be done, although

it is admitted there were defects in its construction at the time the Greer Co. tendered it as a completed plant to the city. It is further said that no opportunity was given to the Greer Co. or Monyahan to remedy the defects as they would and could have done, and that aside from this, as the city paid to the Greer Co. $1,125.00 on the contract price after it had notice of Monyahan's contract and Monyahan was not responsible for the bad construction, it cannot escape liability to Monyahan for the amount of his lien claim, as it is less than the sum the city had paid to the Greer Co.

Before taking up the law of the case it is well to have a better understanding of the facts, because the conclusion reached with reference to the manner in which the contract was performed by the Greer Co. and Monyahan will have much to do with the application of the law.

On the subject as to whether the filter plant was constructed in compliance with the contract or whether it was entirely useless to the city, there is much conflict in the evidence; but we think the weight of it sustains the contention of the city that the filter plant was so wholly defective in its construction as to be totally worthless. It is shown that in the matter of forms, rods to reinforce the concrete, the construction of the concrete walls, the baffle walls, the strainers, and in other respects the contract was not complied with. But the principal defect in the filter was the fact that it would not furnish, as specified in the contract, one hundred thousand gallons of filtered water every twenty-four hours, and that it required a great deal more than 2½% of the amount of water filtered to clean the filter.

To get an adequate supply of filtered water was of course the principal object the city had in view in the construction of the filter plant. It estimated that one hundred thousand gallons of filtered water would be needed every twenty-four hours to supply the demand, and the weight of the evidence shows that the filter was entirely inadequate to furnish this supply.

There is evidence on behalf of Monyahan by Prof. Crooks that he made an examination and test of the capacity of the plant at the instance of the Greer Co., and that in the test, which lasted an hour and forty-five minutes, the amount of water flowing into the basin was much more than would be necessary to make one hundred thousand gallons in twenty-four hours if the supply

furnished during this hour and forty-five, minutes was kept up during twenty-four hours. But we do not attach very great importance to this test. Conditions may have been so arranged as that when the test was made the filter plant showed a greater capacity than it would show if run for twenty-four hours, and the test appears to have been made under conditions created for the purpose of making the test.

At any rate, the city became so thoroughly satisfied that the plant was inadequate to furnish the supply of water needed as to be worthless, and therefore it entirely abandoned the plant and had constructed nearby a new filter. What this new filter cost is not so very important, because the material question is, was the plant as constructed by the Greer Co. and Monyahan worthless? The lower court, in his judgment dismissing the petition of Monyahan, did not assign the reasons that influenced him, but evidently he must have been of the opinion, on the facts, that the filter plant was worthless and therefore the city had received no consideration for the amount it had paid the Greer Co. on the contract, and consequently the Greer Co. had no claim against the city for the balance due under the contract if it had been complied with. And we think the weight of the evidence justified the lower court in coming to this conclusion; so that the facts may be summed up as follows:

(1) That the Greer Co. agreed to construct the plant for $2,250.00, $1,125.00 of which was paid when the Greer Co. had put the material on the ground for the purpose of constructing the plant, the remainder to be paid when the plant was constructed according to contract; (2) that the Greer Co. made a contract with Monyahan to do certain work on the filter plant, for which he was to be paid by it $336.40, and the city had notice of the fact that this contract was made before it paid to the Greer Co. the $1,125.00; (3) that the filter plant, due to the failure of both the Greer Co. and Monyahan, was not constructed according to the contract and was worthless to the city; (4) that the city had no contract with Monyahan, but his contract with the Greer Co. obligated him to do the work he contracted to do in accordance with the terms of the contract between the city and the Greer Co.; (5) it also appears that the worthless condition of the plant was attributable partly to Monyahan, but we do not regard this circumstance as material, because

when the improvement is entirely worthless, it is not important whether this condition was due to the fault of the original contractor or the subcontractors, mechanics or materialmen. The property owner has a right to look to the original contractor for the fulfillment of the contract and the construction of the improvement according to the plans ,and specifications, and if the improvement when finished turns out to be of no value whatever to the property owner, neither the original contractor nor the subcontractors, mechanics or materialmen can enforce the payment of what would have been due them if the work had been done according to the contract. With this understanding of the facts, we will now look to the law of the case.

In the case of Rieger v. Schulte & Eicher, 151 Ky., 129, relied on by counsel for appellant, the facts were these: The Riegers entered into a contract with one Lahner by which Lahner undertook to erect a building for them according to plans and specifications for $4,730.00. Lahner sublet a large part of the work and bought the material he used from various persons. The Riegers advanced to Lahner money from time to time as the work progressed, until the building was completed, at which time he had been paid $3,031.38. Some of the subcontractors and materialmen were not paid and they filed liens against the property and instituted a suit in which they sought to subject the property to the payment of their liens. While this suit was pending, the Riegers filed a separate suit against Lahner in which they sought to recover damages in the sum of $1,643.50 alleged to have been sustained by them by reason of his failure to erect the building according to contract, and sought to set off this claim of $1,643.50 against the liens which the subcontractors and materialmen were asserting against the property. It also appears that the claims of the subcontractors and materialmen amounted in the aggregate to $2,070.00, while the Riegers claimed that the contract price of $4,730.00 should be abated by the sum of $1,643.50 on account of the failure of Lahner to erect the building according to the contract. Upon this state of the facts the court, in holding that the subcontractors and materialmen had a lien, said, in part:

"It will just be seen that, if appellants' contention be sustained *in toto,* the contractor, if he has been paid nothing, would be entitled to a lien upon the building

for $3,087.00, this being the contract price less the amount which appellants claim is due them because of the damage in the construction of the building. The subcontractors and materialmen have a lien upon the building to the extent of the amount for which the contractor was entitled to a lien. Counsel for appellants seems to recognize this principle as correct, but insists that, inasmuch as the contractor was, during the progress of the work, paid something more than $3,000.00, his lien or right to a lien has been cancelled; and hence, the subcontractors and materialmen are not entitled to liens, although they had not been paid. This is not the law. The subcontractors and materialmen are entitled to a lien for the work done and material furnished in the erection of a building, although the owner thereof has been paid the full contract price. The only limitation upon the right of the subcontractor and materialman is that the sum total of their claims may not exceed the contract price. If the owner settles with the contractor, and leaves the claim of the subcontractor or materialman unsatisfied, under the plain provision of the statute, he is bound to pay them, although the effect of this may be to require him to pay twice for the building. It is no defense to the claim of the subcontractor or materialman, who has complied with the requirements of the statutes and whose work and material are of the standard as to quality and kind called for in the contract, that the owner had paid the contractor.

"It is not seriously contended that the particular defects in the building, set up and relied upon as supporting the claim for damages, are properly chargeable to the accounts of these particular claimants, and indeed, the evidence shows that they are not. Appellants may have a just ground of complaint as to the contractor, and others who furnished material or labor, but with those questions these litigants have no concern. The sole question for determination in this case is: Was the material furnished by these claimants of the quality called for in the contract, and did the work, performed on the buildings by the subcontractors, conform to the requirements of the specifications? If so, they were entitled to a judgment for the respective amounts claimed by them, without regard to the character of work done by the contractor himself or other subcontractors or materialmen. As stated, the only limitation upon their

right is that the sum total of all the liens shall not exceed the contract price.''

In Terrell v. McHenry, 121 Ky.; 452, Terrell, the owner of a livery stable, made a contract with McHenry to put a roof on the building, and McHenry sublet the work to one Miller. McHenry and Miller, after completing the work, filed mechanics' liens against the property and brought suit to enforce them. Terrell defended the suit on the ground that under his contract with McHenry he was not to pay for the roof if it leaked in thirty days, which it did, and therefore he resisted the enforcement of the liens. After holding that under the contract McHenry was not entitled to any lien because the roof did not come up to the requirements of the contract and was of no value, the court, in discussing the lien of Miller as a subcontractor, said:

''It is insisted that Miller, who did the work, is entitled to a lien as a subcontractor, although McHenry, under whom he worked, is not entitled to recover. We cannot concur in this construction of the statute. Miller was employed by McHenry, and, while McHenry says that he employed Miller at the request of Terrell, the evidence does not sustain him in this, and Miller having been employed by McHenry must look to McHenry for his pay. If McHenry was entitled to any lien on the house, Miller would be entitled to the benefit of that lien; but if McHenry has no claim which he can enforce, and never had any, there is nothing for Miller's right to attach to. If McHenry had had a claim he could enforce against Terrell, and Terrell had paid McHenry, leaving Miller unpaid, a different question would be presented. But where a contractor fails to carry out his contract, and the owner of the property does not get what he contracted for, and in fact gets nothing of any value, so that he is in no way liable to the contractor, and never was liable, the subcontractor must look to the person with whom he contracted for his pay. McHenry was to get nothing for the roof if it leaked within thirty days, nor until it was made to stop leaking. Miller, who was a subcontractor under McHenry, is in no better attitude, so far as Terrell is concerned, than McHenry, with whom he contracted. If Miller has a lien for his work, then the company in Chicago which furnished the material might also have a lien, and thus Terrell would be

in effect required to pay for the roof, although it was guaranteed to him and was valueless."

In Doll v. Young, 149 Ky., 347, it appears that Young, the owner of a lot, contracted with one Lutz to erect a building on the lot at the price of $2,350.00, and that the building when nearly completed blew down, and Lutz did not undertake to rebuild it or complete his contract, the result being that the building Young contracted for was never built by the contractor. After this mechanics and materialmen who had furnished labor and material in the construction of the building under contract with Lutz, brought suit against Young to enforce the liens they had filed. But the court following the rule laid down in Terrell v. McHenry, held that as Lutz had not performed his contract with Young, and consequently Young had received no consideration for the price he agreed to pay for the construction of the building, the subcontractors and materialmen could not recover.

There is no conflict in these cases. In the Rieger case it was held that the subcontractors, whose claims amounted to $2,070.00, had an enforceable lien upon the property because the owners admitted that the value to them of the building erected under the contract was more than the claims of the subcontractors, and it did not appear that the subcontractors were responsible for the breaches of the contract committed by the contractor for which the owners asserted a claim in damages against the contractor.

In the Terrell case the court held that if the improvement furnished by the original contractor under his contract with the owner was of no value or benefit to the owner, the mechanics or materialmen under contracts with the original contractor could have no lien on the property because the owner had not received anything of value. In other words, the rule laid down in these cases is: (1) That where the original contractor completes the work in accordance with the contract, the property owner will be responsible to mechanics, materialmen and subcontractors who have fulfilled their contracts and who have observed the requirements of sections 2463, 2468 of the statutes for the amount of their claims that do not aggregate more than the contract price, although the owner may have paid the original contractor the full contract price; (2) that although the improvement may not have been constructed in accord-

ance with the contract and hence the owner does not owe the full contract price, he will yet be liable to subcontractors, materialmen and mechanics, who have observed the requirements of the statutes to the extent of the reasonable value of the improvement to him and cannot set off any claim for damages he may have against the original contractor for failing to perform the work according to contract against the claims of the subcontractors, mechanics or materialmen, although he may have an abatement of their claims to the extent that he was damaged by their failure to perform the contracts they had made with the original contractor; (3) that if the improvement contracted for is wholly worthless to the property owner and of no value at all to him on account of the failure of the contractor to fulfill the contract, then a subcontractor, mechanic or materialman can assert no claim against the property owner or lien on the property, although he may not be responsible for the conditions that resulted in the improvement being worthless and of no value to the property owner; (4) that in every state of case the property owner may have an abatement of the claim asserted by the subcontractor, mechanic or materialman to the extent that the property owner sustains damages by his failure to perform his part of the contract.

Having this view of the law of the case, and being of the opinion that the filter plant was of no value to the city, it follows that Monyahan has no claim against the city or lien on the property. The fact that the city had paid the Greer Co. $1,125.00 does not of course help the case for Monyahan. The city simply lost that much money. If it had not paid the Greer Co. anything on the contract price Monyahan would not be entitled to recover anything because the city, not having received anything of value, did not owe the Greer Co. anything.

The judgment is affirmed.