## Goin v. Board of Education, City of Frankfort.

Nov. 24, 1944.

646

Leslie W. Morris and Marion Rider for appellant.

E. C. O'Rear and Allen Prewitt for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

W. S. Goin, the surviving partner of Howell & Goin (hereinafter called the contractor), brought this action against the Board of Education of the City of Frankfort (hereinafter called the Board), to recover $5406.49 alleged to be due for certain reconditioning of a school building made necessary by the 1937 flood while the building was in the course of construction under a contract between the Board and the partnership. The court sustained a general demurrer to the petition as several times amended on the theory that Howell & Goin were under contract to furnish a completed building and any loss or damage thereto in the course of construction which was caused by the elements was that of the contractor and not the owner. Plaintiff declined to plead further, the petition was dismissed and this appeal followed.

On Oct. 15, 1935, Howell & Goin entered into a written contract with the Board for the erection of an elementary school building, on Second Street in Frankfort at a point near the Kentucky River, at a cost of $205,344. The contractor was to furnish the labor and

materials in accordance with the architect's specifications and under the latter's supervision. Part of the cost of the building was furnished by the Public Works Administration (hereinafter called PWA), and the contract provided that on or about the 25th day of each month the Board would pay to the contractor 90% of the labor and materials furnished the preceeding month upon estimates of the architect and approved by the PWA inspector. The remaining 10% of each approved estimate was to be retained by the Board and was not to be paid to the contractor until final completion and acceptance of the building.

The building is situated on the south bank of the Kentucky River and its basement is below high-water mark, while the first floor is a few feet above high-water mark. The basement was of water-proof construction and contained the heating system, toilets and the control board of an elaborate lighting and intraconnected talking system.

After the basement and first floor had been entirely completed and the contractor had been paid 90% of the labor and materials used therein upon the architect's certificate, the river rose to an unprecedented high level on or about January 21, 1937, and as a consequence the basement and first floor were flooded and remained under water for some ten days. This necessitated their being reconditioned which the pleadings averred that the contractor did at the verbal demand of the architect made in the presence of a majority of the members of the Board and upon the architect's assurance that the work would be paid for by the Board.

This reconditioning was done upon the demand and under the supervision of the architect at an expense of $5406.49. There is no question as to the reasonableness of this figure. The sole difference between the parties is whether under the written contract a completed building was to be erected by the contractor and turned over to the Board, or whether under the contract the work is severable and upon each installment being completed and paid for the contractor's liability therefor is terminated, and in the event of destruction or damage to the building through no fault of his, he is not liable.

The contract provides that the architect shall have no authority to order extra work, or to make changes

in the work, unless in pursuance to a written order from the Board signed or counter-signed by the architect, except in an emergency endangering life or property when the architect may direct changes, or extra work, without such signed order. Plaintiff pleaded an emergency existed in that it was necessary to recondition the building immediately to protect the basement and the first floor from being flooded through a normal rise to which the river was subject at that particular season.

By a minute of March 8, 1937, the Board expressed a willingness to bear one-third of this loss, provided the contractor and the PWA would each bear one-third. Before agreeing to this proposition the inspector for the PWA requested to see the contractor's books as to the profits, which request was refused and no settlement was made.

On April 28, 1937, the Board passed a resolution that the building had been completed in accordance with the plans and specifications and accepted it.

The petition as amended averred that the reconditioning of the building was done at the verbal demand of the architect made in the presence of the majority of the Board and upon the architect's assurance that it would pay therefor, and the two minutes of the Board referred to above are alleged to be the written ratification by the Board of the architect's action and it is estopped to deny liability to pay for this reconditioning.

We will first dispose of plaintiff's contention that this work was done in an emergency, therefore under the terms of the contract a written order from the architect was not required in order that the Board be liable therefor. It is apparent that the emergency was over when this work was ordered by the architect, nor would this reconditioning of the basement and first floor afford any protection against any subsequent rise in the river which might be expected during the winter or early spring. The averments in the pleading that the work was done to protect the building in an emergency were but the conclusions of the pleader as no facts were pleaded showing the emergency existed or whereby this work afforded protection to the building.

Equally without merit is plaintiff's insistence that the two minutes entered on the Board's records amount

to a ratification of the alleged assurance by the architect to the contractor that the Board would pay for this work. Without going into or deciding the question of whether the Board could delegate to the architect the power to bind it on a contract for this reconditioning (KS 4399-48, now KRS 162.070; County Board of Education v. Durham, 198 Ky. 773, 249 S. W. 1028), the law is that the Board could ratify any contract it could make. Estill County v. Wallace, 219 Ky. 174, 292 S. W. 816. But such ratification would have to be made in the same manner and with the same formality that is required to bind the Board and must be unequivocal in character. Duff v. Knott County, 238 Ky. 71, 36 S. W. 2d 870.

By no stretch of the imagination can either of the minutes be interpreted as a ratification on the part of the Board. The first minute expresses but a willingness to compromise the claim upon certain conditions which were unacceptable to the contractor. The second minute merely accepted the building on April 28, 1937, as having been "completed in accordance with all approved plans and specifications and contract documents." Neither of these minutes shows the least intention on the part of the Board to ratify the architect's alleged agreement that it would pay the contractor for reconditioning the building after the flood.

We come now to the real question in the case, whether the contract called for a completed building or whether under it the work is severable and upon completion and acceptance of each installment the contractor's liability ceased thereon in the event of destruction or damage to the building without fault on his part.

The contract provided the work would start immediately after the authorization by the Director of the WPA and it was to be completed within 300 calendar days and the contractor was to furnish all labor and materials for the sum of $205,344. No provision is made for any part of the contract price to be paid upon completion of any specific part of the job, but there is a provision that the Board would pay monthly to the contractor on account 90% of the labor and materials furnished the preceding month, the remaining 10% to be paid upon final completion of the building. The contractor agreed to protect his work from damage and further to protect the owner's (here the Board's) property

from injury or loss arising in connection with this contract.

It is apparent that it was the intention of the parties to, and they did, enter into an entire and indivisible contract for a completed building. Such being the case, the law is that the contractor must stand the expense of the damages to the building by the flood in the course of its construction. 9 Am. Jur., sec. 60, p. 43; Doll v. Young, 149 Ky. 347, 149 S. W. 854; Peck-Hammond & Co. v. Miller, 164 Ky. 206, 175 S. W. 347; Annotations 53 A. L. R. 105.

The contractor in relying upon the Miller case seems to have disregarded that part of the opinion wherein it is pointed out that the contract was modified by correspondence so as to bring that case within the exception to the rule stated in the above paragraph. The exception is that if under the terms of the contract the work is severable and the contract price is payable in installments upon completion of certain portions or units of the work and the building is destroyed after such a unit is completed, the contractor may recover of the owner the amount due on the completed portion of the job. But in the case at bar the contract was not severable and the job was not divided into units with an agreement to pay as each unit was completed. The contract price was a fixed total sum for the entire completed building and the monthly, or installment, payments were on account and were not made on the completion of specific units of the work, but evidently they were made for the convenience of the contractor in meeting pay rolls and bills for materials, as the contract price was more than $200,000. In such circumstances the installment payments do not take this case without the general rule denying recovery to the contractor in case of loss before the building is completed. 9 Am. Jur. sec. 61, p. 44; Superintendent, etc., of Public School of City of Trenton v. Bennett, 27 N. J. Law 513, 72 Am. Dec. 373; Bartlett v. Bisbey, 27 Tex. Civ. App. 405, 66 S. W. 70.

We are of the opinion that the trial judge correctly sustained the general demurrer to the petition as amended, therefore the judgment is affirmed.