## McClain and Canaday v. Coleman, et al.

## Coleman, et al. v. Phipps, et al.

### (Decided March 24, 1925.)

### Appeals from Graves Circuit Court.

1. Mechanics' Liens—Owner Not Entitled to Credit for Amount Misapplied by Contractor as Against Lien Creditors.—Under provision of Ky. Stats., section 2463, that liens shall in no case aggregate more than contract price, owner is not entitled to credit for amounts advanced contractor, except to extent that such amounts were applied by contractor to payment of lien creditors.

2. Principal and Surety—Failure to Pay Contractor in Even Amounts at Certain Times Held Not Violation Releasing Bondsmen.—In view of breadth of terms of building contractor's bond and its failure to provide how payments to contractor should be made, and in view also of certain supplemental undertakings of sureties,

owner's failure to pay contractor in even amounts and at stated times, as provided by contract, held not to release sureties where payments made aggregated those amounts, notwithstanding rule that sureties may stand ·upon strict terms of obligation.

W. J. WEBB and ROBBINS & ROBBINS for appellants R. F. McClain and H. C. Canady.

HOLIFIELD, GARDNER & McDONALD, STANFIELD & STANFIELD, J. E. WARREN and W. H. WYMAN for appellees J. E. Coleman and others.

HOLIFIELD & McDONALD for appellants J. C. Coleman and others.

R. N. STANFIELD, JAMES T. WEBB, J. E. WARREN and ROBBINS & ROBBINS for appellees J. L. Phipps and others.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Two appeals are presented upon the same record, one styled McClain and Canaday v. Coleman, et al., and the other styled Coleman, et al. v. Phipps, etc. They involve largely the same questions.

In 1920 Coleman, the owner of a lot in Mayfield, contracted with Hatcher, a builder, whereby he employed Hatcher in consideration of $6,340.00 to furnish all the labor and material and erect for Coleman on his lot a dwelling house, according to certain plans and specifications attached to the written contract.

It was provided in the contract that Hatcher, the builder, was to provide all the "labor and materials required for the erection of and to erect for the first party a two-story bungalow, same to be erected ·on the lot of the party of the first part, same being on South Sixth street and is a part of the old Smith Thomas property in Mayfield, Ky. All such labor and materials so to be furnished, to be in accordance with certain plans, drawings and specifications for the same as fully agreed upon by the said contracting parties, and here referred to and made a part of this contract as fully ·as if incorporated herein. Said second party agrees to furnish, provide and do said work promptly and in a workmanlike manner and without delay beyond such as is necessitated by weather and labor conditions and his inability to procure materials entering into such construction, and he further

agrees to turn said building over to the party of the first part upon completion free from all liens or incumbrances to mechanics, materialmen or subcontractors."

It was further provided in the contract that Coleman was to pay the contract price for the building in installments of $634.00 each, the first to be paid when the foundation was complete, the second when the frame was up, the third when the roof was on, the fourth when the stucco was on, the fifth when the plastering was done, the sixth when doors and windows were in, and the balance on the completion and acceptance of the building by Coleman. To save Coleman harmless Hatcher executed to him a bond with McClain and Canaday as sureties providing that "Whereas, J. C. Hatcher has entered into a certain written contract for the construction of a building for the said J. E. Coleman and the furnishing of all materials and laboring entering into the construction of such building, which building is to be constructed in strict accordance with certain plans and specifications made a part of said contract and the contract price of which is to be $6,340.00, we undertake that the said J. C. Hatcher will well and truly comply with and fulfill all the conditions of and perform all of the work and furnish all the labor and materials required by said contract together with any changes in or additions to or omissions from same and which may be hereafter made, and shall perform all the undertakings stipulated herein to be performed by said Hatcher and such as are to be performed under any such changes, additions or omissions, and shall make payment to all persons supplying labor or materials contemplated by said contract and fully relieve the said J. E. Coleman and his said property of any and all liens or incumbrances to mechanics or materialmen growing out of such construction; and do hereby obligate ourselves to fully indemnify and reimburse the said J. E. Coleman on account of any loss or damage he may sustain by reason of the failure of the said Hatcher to fully comply with the terms of said contract in any of the above particulars."

This bond was signed by Hatcher and appellants, McClain and Canaday.

After the work had been started and the foundation laid and some of the superstructure in place, the wife of Hatcher sued him for divorce and attached his funds in bank; thereupon Hatcher and his sureties, McClain and

Canaday, applied to Coleman to advance money with which to pay laborers and those who provided building material for the house, and in order to induce Coleman to comply with their request executed to him another obligation, reading:

"Whereas, John C. Hatcher has a contract with J. E. Coleman by the terms of which said Hatcher has agreed to build a house for said Coleman for the lump sum of six thousand three hundred and forty dollars and said Hatcher is now building said house and has not yet completed the same, and in order to complete said house said Hatcher has been and will be compelled to draw money enough as the work progresses to pay for labor or hands to help build and complete said house;

"Now, therefore, in consideration of the premises we, John C. Hatcher, together with H. C. Canaday and R. F. McClain as sureties, hereby covenant to and with J. E. Coleman that we will indemnify him and hold him harmless against all loss or damage he may sustain by reason of any and all sums or amounts that he shall pay to said Hatcher to be used by him in paying for labor or hands to complete said house. August 28, 1920.

"Said money having been attached by Mrs. Carrie Hatcher.

"The execution of the within shall in no wise be deemed to waive or lease any of the provisions of bond heretofore given to J. E. Coleman for the faithful performance of builder's contract by J. C. Hatcher."

Under this arrangement Coleman furnished to Hatcher several different sums of money.

Some time about the first of September Hatcher abandoned the work and left the state. Thereupon his bondsmen, Canaday and McClain, applied to Coleman for funds with which to carry on the work of completing his house, and on September 15th executed and delivered to Coleman the following writing:

"Mayfield, Ky., Sept. 15, 1920.

"We, R. F. McClain and H. C. Canaday, having signed J. C. Hatcher's bond to J. E. Coleman for the faithful performance of said J. C. Hatcher's contract

to build a house for said J. E. Coleman, hereby, in the absence of said J. C. Hatcher, agree that said J. E. Coleman pay out of the contract price for labor necessary to complete the building. Such amounts, for labor yet needed to complete the work, may be paid by said J. E. Coleman to the party doing the work upon a statement of the workman showing what work the payments are for. It is further agreed that this agreement is not to affect the bond or agreements already signed.

"Signed this Sept. 15, 1920.

"H. C. CANADAY,
R. F. McCLAIN."

Pursuant to these several agreements the bondsmen caused the house to be practically completed. The amounts advanced by Coleman up to this point totalled $3,829.25, leaving a balance in his hands of more than $2,500.00. In November appellee Phipps presented to Coleman a bill for $393.45 for plumbing, bathtubs, commodes, etc., which he had installed in the Coleman house by contract with Hatcher. This Coleman declined to pay, saying he did not know the amount owing by Hatcher and whether the claim was just. By this time Coleman had become aware of the fact that Hatcher had left a number of claims unpaid. Phipps filed his claim in the clerk's office as provided by section 2463, Kentucky Statutes, against the house and lot of Coleman. A few days later he filed suit to enforce his lien. Other claimants filed their bills as liens against the property. Coleman answered and alleged he had contracted to pay $6,340.00 for the house complete and had paid on that price $3,829.25, and held in his hands $2,510.75 which he tendered into court. He set forth the bond of Hatcher with McClain and Coleman as sureties, and made them parties defendant to his cross-petition. The matter was referred to the master commissioner of the Graves circuit court for hearing of proof and the marshalling of liens against the property of Coleman. The court allowed the claims of Phipps for $393.49, Robertson for $298.00, Carter for $50.00, Albritton for $87.50, and the Mayfield Planing Mills $2,666.32, and adjudged them liens upon the house and lot. It was further adjudged that of $2,510.75 paid into court by Coleman, the cost of the litigation, $171.70, should be paid and that the balance should be paid ratably upon the several claims adjudged against the prop-

erty. After doing this, there was left unpaid $1,158.34, a lien against the property, each lien claim being unsatis-fied to the extent of twenty-four (24%) per cent.

While the court adjudged the sum of $1,158.34 against Coleman and his property in favor of the materialmen and laborers who had contributed to the erection of the house, it adjudged this sum in favor of Coleman against the bondsmen of Hatcher, the contractor, and it is from this judgment that the bondsmen, Canaday and Coleman, appeal. Coleman appeals from the order and so much of the judgment as made him liable to the lien claimants and directed the subjection of his house and lot to the payment of the liens.

It is Coleman's contention that he was only liable in any event for $6,340.00, the contract price of the house, and when he paid that sum he was entitled to be discharged and acquitted, and that his property should not have been subjected to the lien claims of those who furnished material and labor in the erection of his house.

It is asserted in his behalf that the materialmen were only entitled to assert liens against his house, *pro rata,* up to the contract price, and when the contract price was exhausted the lien holders were at their row's end.

It is provided by section 2463, Kentucky Statutes, that "a person who performs labor or furnishes material in the erection, altering or repairing a house, . . . or for the improvement in any way of any real estate by contract with, or by the written consent of, the owner, contractor, . . shall have a lien thereon, and upon the land upon which said improvement shall have been made . . . to secure the amount thereof with cost; and said lien on the land or improvements shall be superior to any mortgage or incumbrance created subsequent to the beginning of the labor or the furnishing of the materials . . . the liens provided for herein shall in no case be for a greater amount in the aggregate than the contract price of the original contractor, and should the aggregate amount of the liens exceed the price agreed upon between the original contractor and the owner, then there shall be a *pro rata* of the distribution of the original contract price among said lien holders."

This section of the statutes, especially with reference to the *pro ration* of the lien claims and the subjection of the property to the lien of materialmen, was discussed

and construed in Rieger v. Schultz, etc., 151 Ky. 129, where we said:

"The subcontractors and materialmen have a lien upon the building to the extent of the amount for which the contractor was entitled to a lien. Counsel for appellants seems to recognize this principle as correct, but insists that, inasmuch as the contractor was, during the progress of the work, paid something more than $3,000.00 his lien or right to a lien has been cancelled; and hence the subcontractors and materialmen are not entitled to liens, although they had not been paid. This is not the law.

"The subcontractors and materialmen are entitled to a lien for the work done and material furnished in the erection of a building, although the owner thereof has been paid the full contract price. The only limitation upon the right of the subcontractor and materialman is that the sum total of their claims may not exceed the contract price. If the owner settles with the contractor, and leaves the claim of the subcontractor or materialman unsatisfied, under the plain provision of the statute, he is bound to pay them although the effect of this may be to require him to pay twice for the building. It is no defense to the claim of the subcontractor or materialman who has complied with the requirements of the statutes and whose work and material are of the standard as to quality and kind called for in the contract, that the owner has paid the contractor."

Coleman paid the contractor, materialmen and laborers, $3,829.25, leaving only $2,510.75 in his hands. This he later paid into court, and it was distributed as stated above. He would not be liable for any sum in excess of $6,340.00, the contract price, if the money paid by him to Hatcher, the contractor, had been applied by Hatcher to the payment of materialmen and laborers. Of the sum paid by Coleman, $3,829.50, he could only show that $1,609.95 had been paid to materialmen and laborers in the erection of his house, leaving $2,219.30 of the total sum paid, $3,829.25, which was paid to Hatcher and applied by him in some other way than the payment of lien creditors. Coleman was not, therefore, entitled to credit as against the lien claimants for the $2,219.30 paid to Hatcher and misapplied by him. If that sum had been

used by Hatcher for the payment of materialmen and laborers Coleman would have been protected and would have been liable only for the contract price, $6,340.00. The duty devolved upon Coleman to look to the application of the money paid by him to Hatcher, the contractor, and to see that Hatcher paid the money to materialmen for material to go into the house or to laborers for service in its construction, and if he failed to do so he and his property became liable in the first instance to the lien holders to the extent that he allowed the money paid to Hatcher to be applied to other purposes than the payment of materialmen and laborers holding lien claims. The unsatisfied liens in this case were not nearly so great as the amount paid to Hatcher and misappropriated by him.

The rule, as stated in the case of Reiger, &c. v. Schulty, etc., *supra*, was applied in the recent case of Monyahan v. City of Lancaster, 168 Ky. 677.

Appellants, McClain and Canaday, bondsmen of Hatcher, in addition to the insistence stated above, say that Coleman, for whom they had been adjudged liable on the bond, should not have been adjudged liable for the $1,158.34, because there were a number of claims for material furnished to Hatcher and used in the house which were disallowed by the commissioner because not filed and presented to the commissioner, or not filed and presented in the proper time and manner which, if added to the lien claims allowed, would have made the total amount $7,640.00, cost of the building, making the contract price only eighty-three (83%) per cent of its actual cost, and reducing the amount of each claim accordingly to eighty-three (83%) per cent. As each of the claimants was actually paid 76% from money deposited in court by Coleman, there remains but 7% unpaid instead of 24%, and the judgment should have been for 7% of their claims instead of 24% as was entered by the court. This would have reduced the liability of the sureties more than one-half. The facts in this case do not support this contention of the bondsmen. This claim must, therefore, be denied.

They next insist that the contract stipulated that Coleman was to make payment of even amounts at certain times to the contractor, and that Coleman ignored the stipulations of the contract in making these payments; that by the terms of the contract he should have paid $3,804.00, in six payments of $634.00 each, but in-

stead he paid $3,829.25 in amounts ranging from $2.50 up to $850.20; that in only one instance was payment made of an amount stipulated in the contract. This appellants, McClain and Canaday, insist was a violation of the terms of the contract and bond.

Sureties, as has often been said, are favorites of the law and will not be made to respond except in cases where they are shown to come clearly within the terms of the obligation.

"A rule never to be lost sight of in determining the liability of the sureties or guarantor is, that he is a favorite of the law and has the right to stand upon the same strict terms of his obligation when such terms are ascertained. This is a rule universally recognized by the courts, and is applicable to every variety of circumstances." Brandt on Suretyship and Guaranty (3 ed.), vol. 1, sec. 106.

In Pengrey on Suretyship and Guaranty (2d ed.), sec. 102e, the rule is stated:

"It may be stated generally that where the contract provides the manner in which payment shall be made there should be a compliance therewith. If the contract provides that payments are to be made at stated periods dependent upon the progress of the work or are to be withheld under certain designated conditions, a surety has a right to insist that such provisions shall be complied with and will be released where there has been a material departure therefrom to his injury, in the absence of acts on his part which will operate as an estoppel."

We have stated the principle in Calloway v. Snapp, 78 Ky. 561 as follows:

"It is well settled and undisputed law that a surety is only bound by the very terms of his contract; and that if the creditor does any act, which, in contemplation of law, alters the surety's liability, increases his risk, or deprives him, even for a moment, of the right to pay the debt and assume the position of creditor, or of his right to seek indemnity, the surety is thereby discharged, and the fact that the surety may not have been actually injured is immaterial."

There can be no question about the existence of the
rule with respect to the liability of sureties on bonds,
such as the one executed by Hatcher to Coleman for the
faithful performance of the contract to furnish the ma-
terials, erect and complete the residence.   The terms of
the bond must be looked to. They could hardly be broader
than in this case.   The bondsmen undertook that Hatcher
"will well and truly comply with and fulfill all the con-
ditions of and perform all of the work and furnish all the
labor and material required by said contract,  .   .   .
and shall perform all the undertakings stipulated therein
to be performed by the said Hatcher and such as are to
be performed under any such changes, additions or
omissions, and shall make payment to all persons sup-
plying labor or maetrials contemplated by said contract,
and fully relieve the said J. E. Coleman and his said
property of any and all liens or incumbrances to me-
chanics or materialmen growing out of such construc-
tion.''

The bond also provides that the sureties "do hereby
obligate themselves to fully indemnify and reimburse the
said J. E. Coleman on account of any loss or damage he
may sustain by reason of the failure of said Hatcher to
fully comply with the terms of said contract in any of
the above particulars.''

There was no provision in the bond as to how the
money should be paid by Coleman to Hatcher, and no con-
dition imposed upon Coleman with respect to the per-
formance of his part of the contract—the payment of
the money.   There is no doubt that Coleman fully per-
formed his part of the contract and attempted to do so in
a fair and honest way.

While the contract price was not paid in installments
of $634.00, as provided by the contract, it was paid in
sums aggregating those installments.   After the work
had been in progress for some time the securities with
their principal Hatcher made an additional obligation to
Coleman in order to induce him to advance money to
Hatcher with which to complete the building, it being re-
cited in that undertaking, "The said Hatcher is now
building the said house and has not yet completed the
same and in order to complete the said house said
Hatcher has been and will be compelled to draw money
enough as work progresses to pay for labor or hands to
help build and complete said house.  Now, therefore, in
consideration of the premises, etc.,  .   .   .   sureties

hereby covenant to and with J. E. Coleman that he will indemnify him and hold him harmless against all loss or damage he may sustain by reason of any and all sums or amounts that he shall pay to said Hatcher to be used by him in paying for laborers or hands to complete said house.''

This supplemental obligation was executed on August 28th, while the original was executed on March 12, 1920. On September 15th, the sureties alone executed to Coleman another obligation to save him harmless provided he would advance money with which to complete the house, and the money was advanced by Coleman under these circumstances and conditions and not otherwise. Each of the subsequent bonds provided in substance, ''It is further agreed that this agreement is not to affect the bond or agreement heretofore already signed.''

We cannot see how appellants, McClain and Canaday, could expect a court, under the facts in this case and the terms of the bond and the subsequent undertakings of the sureties, to hold that the payment of the contract price by Coleman to Hatcher and to materialmen and laborers, was a violation of the rights of the sureties or in any way prejudiced their rights, thus releasing them in whole or in part from their undertaking. It cannot be done. Upon the whole we think the chancellor correctly adjudged the rights of the several parties to these appeals as well as other litigants, parties to the case in the lower court, for which reason the judgment is affirmed on both appeals.

Judgment affirmed.